## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

JONATHON A. MOSELEY
a natural person
3823 Wagon Wheel Lane
Woodbridge, Virginia 22192

                    Plaintiff,

     v.

JUDGE MICHAEL GARDNER
of the Virginia Fairfax
County Circuit Court,
In his personal and official capacity
Chambers, Fifth Floor
Fairfax County Courthouse
4110 Chain Bridge Road
Fairfax, Virginia 22030

       and

ROBERT VAUGHN,
O'Connor & Vaughn, LLC
11490 Commerce Park Dr. Suite 510
Reston, Virginia 20191

       and

SOLUTION PAINTING INC.
**Serve**:  Registered Agent
         Nadia K Messersmith
         3813 Kendale Road
         Annandale, Virginia 22003

                    Defendants.

Civil Action No.  _____

TRIAL BY JURY DEMANDED

**SWORN AND VERIFIED**
**COMPLAINT AGAINST CONSPIRACY TO VIOLATE CIVIL RIGHTS**
**AND COMPANION REQUEST TO CERTIFY A CLASS ACTION**

**I.   MOTION TO CERTIFY A CLASS**

Supported by a companion motion, the Plaintiff requests certification of a class action pursuant to Federal Rules of Civil Procedure ("FCRP") Rule 23 consisting of all persons who have been found by a judgment or order of the Fairfax County Circuit Court to owe money or a debt in any civil payable to any private, third party, other than for the exception of domestic relations (child support or spousal support obligations or other dependent person support). (Fairfax County, Virginia is a County larger than 8 states.)  The class faces a common question of law that the U.S. Constitution as confirmed with, admitted to, and agreed to by Virginia statutory law does not permit imprisonment of persons by Virginia courts to collect or enforce a civil debt on behalf of a private party (not a fine payable to government).  The lead Plaintiff is a Virginia attorney who also has standing as being personally affected.  The class action does not involve the validity of underlying debts except merely to illustrate for the Court's understanding that there is no excuse available from the type of debt for the violations of the U.S. Constitution.

**II.   INTRODUCTION**

1.     Plaintiff sues the Defendants for violating Plaintiff's civil rights, primarily for a temporary restraining order, temporary injunction, and/or permanent injunction against the Defendants, legally conspiring within the meaning of the term in the law, to have the Plaintiff imprisoned for not paying a civil debt to a third, private party that he cannot pay.

2.     For being unable to pay a civil debt allegedly payable to a private, third party, the Defendants had the Plaintiff imprisoned already for six (6) days, including being held in the Prince William County Adult Detention Center over his birthday.

3.       Yet, the Supreme Court of Virginia has already ruled that the 13th Amendment to the U.S. Constitution is violated by the imprisonment of even a criminal defendant for non-payment of fees, payable to the court, related to an actual criminal conviction In <u>Wright v. Matthews</u>, 209 Va. 246, 163 S.E.2d 158 (1968).

4.       The U.S. Supreme Court held in <u>Bearden v. Georgia</u>, 461 U.S. 660 (1983) that imprisonment for non-payment of an actual fine imposed as a conviction for an actual criminal violation was held to be unconstitutional under the Equal Protection Clause of the Fourteenth Amendment, without proof that a debtor actually has the money to pay but refuses to pay.

5.       The Defendants, jointly and conspiring together, have already imprisoned the Plaintiff for six days for not paying a civil debt, payable to a private third party (not a fine to the court or government) in a purely civil case.

6.       This debt is ___*not*___ in any way related to domestic relations.  It is ___*not*___ in any way related to any child support obligation or spousal support obligation.

7.       Now at a hearing scheduled for October 22, 2020, Defendants Vaughn and his client Solution Painting, Inc., are asking Judge Gardiner to further imprison the Plaintiff for not paying this civil debt (___*not*___ for domestic relations).

8.       Because non-payment of a fee payable to the court from even a criminal conviction violates the Thirteenth Amendment to the U.S. Constitution, there is no characterization of the instant debt asserted against the Plaintiff that can cure the constitutional violation herein.

9.       Every debt officially determined by any court, including any judgment of any kind, constitutes a court order, even when called a "judgment."

10.     **Thus this will create a precedent for all civil debts and debtors.**

11.     Just when millions of Americans are recovering from the COVID-19 pandemic during which an estimated 30 million Americans lost their jobs, [1] the Defendants are fighting for the right to imprison ordinary civil debtors, reminiscent of the world portrayed by Charles' Dickens.

12.     Even Democrat Attorney General Mark Herring, flirting with a run for Governor of Virginia, has not stopped to question the creation of debtors' prisons in the Old home of the Confederacy in the Commonwealth of Virginia, which pits elected Democrat Mark Herring dramatically at odds with his voter base if he were to run for Governor.

13.     The Defendants have made no attempt to explain or identify why their attempt to collect a debt by imprisonment would be in any way different for this Plaintiff as compared with the 30 million Americans who lost their job during the COVID-19 economic shut-down or millions of others who owe private debts ordered by the court.

14.     To focus on the constitutional violation in violation of the Plaintiff's rights under the Fifth Amendment and Thirteenth Amendment and Equal Protection clause of the Fourteenth Amendment of the U.S. Constitution, the Plaintiff chooses not to ask this Court to express any view on said hearing or proceedings.  The Defendants can hold all the hearings they want (which will establish more evidence against them).

15.     However, Plaintiff <u>does</u> ask this Court to <u>enjoin</u> any order or action ***actually depriving the Plaintiff of his liberty*** in violation of the Fifth Amendment, Thirteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

---

[1]     Eric Morath, Wall Street Journal, "How Many U.S. Workers Have Lost Jobs During Coronavirus Pandemic? There Are Several Ways to Count ," June 3, 2020, https://www.wsj.com/articles/how-many-u-s-workers-have-lost-jobs-during-coronavirus-pandemic-there-are-several-ways-to-count-11591176601

16.     Again, for the purposes of this action, the Defendants may have all the hearings they wish, but the Plaintiff asks this Court to protect Plaintiff's constitutional rights to liberty, prohibiting his imprisonment or detainment from a civil debt not owed to a government.

17.     And, in addition, the Plaintiff also seeks damages, attorneys, fees, and costs.

*18.*     ***NOTE THAT THIS CASE INVOLVES THE ABRIDGEMENT OF FEDERAL CIVIL RIGHTS OF LIBERTY PROTECTED BY THE U.S. CONSTITUTION AND FEDERAL LAW.***

19.     ***Even though the original debt is illegal under Virginia law, THAT IS NOT WHAT THIS CASE IS ABOUT.  THIS IS ABOUT VIOLATION of  THE 13TH AND 5TH AMENDMENTS TO THE U.S. CONSTITUTION*, not about the original decision of the State court by the imprisonment of a debtor for** non-payment of f civil debt.

20.     Note that the Plaintiff herein filed a Petition for Writ of Prohibition as an original action in the Supreme Court of Virginia, but the Virginia Supreme Court ruled that it would not exercise the extraordinary remedy of a writ of prohibition as a remedy, although Plaintiff insists that the Virginia Supreme Court gave the "correct" answer *to the wrong question.*

21.     The Petition for Writ of Prohibition was In Re:  Jonathon A. Moseley And Blanca Mijares V. Circuit Court Of Fairfax County, By The Honorable Judge Michael Gardner And Solution Painting Inc., Record No. 201038, dismissed as a Petition for Writ of Prohibition.

*22.*     ***However, declining to take jurisdiction under Prohibition is not a decision on the merits, whereas Wright v. Matthews, 209 Va. 246, 163 S.E.2d 158 (1968) is a decision on the merits as a binding precedent.***

23.     As grounds therefore, Plaintiff alleges as follows:

## III.        JURISDICTION AND VENUE

24.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343 (a)(3) and 42 U.S.C. § 1983.

25.      Venue is proper for Defendants pursuant to 28 U.S.C. § 1391(b) because all of the Defendants reside in the County of Fairfax, Virginia, or the Eastern District of Virginia and the majority of the actions and omissions by the Defendants were undertaken within or initiated from the County of Fairfax, Virginia, or Prince William County, Virginia.

26.      This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367; *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966).

## IV.   THE PARTIES

27.      Plaintiff Jonathon A. Moseley is an attorney active residing and working in Prince William County and frequently appearing as an attorney in Fairfax County, Virginia.

28.      Defendant Judge Michael Gardiner is apparently only the second judge in Virginia to have violated the 13th Amendment to the U.S. Constitution which prohibited slavery and involuntary servitude, acting outside of his jurisdiction and authority by violating the U.S. Constitution to the United States.  Having been repeatedly warned of the law, Judge Gardiner has knowingly, willfully, and persistently continued to violate the U.S. Constitution, federal law, and Virginia law.  Gardiner is a judge of the Circuit Court of Fairfax County, Virginia.  However, acting – after being repeatedly advised – outside of his lawful authority Gardiner has acted and is sued as an individual as well as in his official capacity.

29.      Defendant Attorney Robert Vaughn is the Fairfax County, Virginia attorney for Solution Painting, Inc. and Mario Vega in Blana Mijares' lawsuit alleging sexual harassment, wrongful termination in violation of public policy in discovering and threatening to foreclose

fraudulent accounting affecting the federal and state tax returns and payments for federal and state taxes and false information apparently seeking state benefits from the Fairfax County, Virginia government based on false information provided by Solution Painting to Fairfax County.  Although done in the name of Solution Painting, it is evident that Robert Vaughn's delusional obsession with breaking the law is his own unlawful crusade which Solution Painting on its own would not understand or choose to pursue.

30.     Defendant Solution Painting, Inc. is a Virginia corporation with its offices in Fairfax County, Virginia, which was a Defendant in Blanca Mijares' originally *pro se* lawsuit, represented by attorney Robert Vaughn, and which Defendant Vaughn now claims as owed $6,995 jointly and severally from Blanca Mijares and Jonathon Moseley.

31.     Non-Party Blanca Mijares was the *pro se* Plaintiff in *Blanca Mijares v. Solution Painting, Inc. and Mario Vega*, Fairfax County Circuit Court, Case No.  2019-08311, who appears to be jointly and severally liable for the alleged debt of $6,995 which Judge Gardiner ordered ***"someone"*** (not identified) to pay to on January 15, 2020, to Solution Painting, Inc. and Mario Vega, Defendants in the original state court action.

## V.     FACTS, LAW AND LEGAL PRECEDENTS COMMON TO ALL COUNTS

32.     Courts have consistently held that a colorable constitutional violation gives rise to a showing of irreparable harm. *See Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (a constitutional violation and loss of constitutional protections "'for even minimal periods of time, unquestionably constitutes irreparable injury'") (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)); *see also Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 53 (D.D.C. 2002) (deprivation of constitutional protection "is an undeniably substantial and irreparable harm").

33.     Federal law provides a cause of action:

2 U.S. Code § 1983.Civil action for deprivation of rights

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

34.    Federal law also provides a cause of action as follows:

> 42 U.S. Code § 1988.Proceedings in vindication of civil rights
>
> (a)Applicability of statutory and common law
> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.
>
> (b)Attorney's fees
> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C. 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C. 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or section 12361 of title 34, the court, in its

discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

(c)Expert fees
In awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.

35.     Defendant Judge Gardiner is now apparently only the second judge in the history of Old Virginny – once the center of the Confederacy -- to violate the 13th Amendment to the U.S. Constitution, which after Virginia lost the Civil War outlawed slavery and all forms of involuntary servitude.

36.     However, none of this would have occurred without Defendant Vaughn as an officer of the court repeatedly and obsessively demanding official governmental action by Judge Gardiner, requesting Gardiner specifically as the only judge to hear his unlawful motions.

37.     The Defendants have acted jointly and in concert in taking official government action through the Fairfax County Circuit Court.

38.     All of the Defendants have been repeatedly warned of the unlawful and unconstitutional nature of their actions, yet persist and refuse to comply with the U.S. Constitution and the law.

39.     The Supreme Court of Virginia has defined for the Commonwealth of Virginia and admitted that a civil debt cannot be collected or enforced by imprisonment:

40.     Virginia's Supreme Court, in Wright v. Matthews, 209 Va. 246, 163 S.E.2d 158 (1968), held, as binding precedent today, that a court fee payable to the court (commonly referred to as "court costs") even in a criminal prosecution cannot be the basis for imprisoning a

convicted criminal who has not paid his court costs:

> **We therefore hold that Wright's imprisonment for nonpayment of costs contravenes the Thirteenth Amendment. [4]**

*And*

> **Since Wright's confinement constitutes involuntary servitude, it is proscribed by the Thirteenth Amendment unless he is confined as punishment for a crime. See <u>Pollock v. Williams</u>, 322 U.S. 4, 17, 64 S.Ct. 792, 799, 88 L.Ed. 1095, 1103 (1944);  <u>Bailey v. State of Alabama</u>, 219 U.S. 219, 233-- 234, 31 S.Ct. 145, 152, 55 L.Ed. 191, 202 (1911).**

41.     <u>Wright v. Matthews</u> was a petition for a writ of habeas corpus.  The Supreme Court granted the writ and ordered the immediate release of William Ernest Wright.

42.     In that precedent, William Ernest Wright filed a *pro se* Petition for Writ of Mandamus, which Virginia's Supreme Court chose to treat as a Petition for Writ of *Habeas Corpus.*

43.     In that precedent, Wright was convicted criminally of nine counts of statutory burglary and attempted burglary, including payment of costs in the case.

44.     In that precedent, the Clerk assessed (in 1964 dollars and economy) $1,064.75[2]  in costs to be paid by William Ernest Wright for the costs arising from his criminal conviction, case, and trial.

45.     This imprisonment was then supported by two Virginia statutes Va. Code 19.1-344 and Va. Code 53-221.

46.     Nevertheless, the Supreme Court of Virginia found it to be a federal law violation of the U.S. Constitution, despite the existence of two Virginia state statutes on the topic.

---

[2]     equivalent to $8,939.78 in 2020 dollars, even more than the principal amount at issue in this instant case here at $6,965.00, see https://www.in2013dollars.com/us/inflation/1964?amount=1064.75

47.     At the end of a long footnote 2 in <u>Wright v. Matthews</u>, the Supreme Court reminded that civil liability for the debt remained, thus implying, it would seem, that attention should have been and should be directed to civil debt mechanisms for collecting the debt.

48.     If even a court fee payable to the court ("court costs") arising from an actual criminal conviction cannot be enforced by imprisonment, then a civil judgment payable to a private party, cannot be enforced under the contempt of court power.

49.     Today, because it is not possible legally to collect criminal-conviction related court fees and court costs, the General Assembly has provided a special statute to suspend a Virginia resident's driver's license as really the only method for collecting unpaid court fees and costs.  See Va. Code § 46.2-395.

50.     The General Assembly passed Va. Code § 46.2-395 because it is not possible to use the contempt power or imprisonment to collect payment of criminal conviction court fees and court costs from criminal or traffic infraction cases.

51.     Here, the Defendant Judge Gardiner at the formal, official request of the Defendant Solution Painting, Inc., the latter represented by Defendant attorney Robert Vaughn as an officer of the Court, had Jonathon Moseley arrested by a capias issued on August 20, 2020, claiming contempt of Court

52.     The Defendant's actions are also a violation of the U.S. Supreme Court's holding in **<u>Bearden v. Georgia</u>, 461 U.S. 660 (1983).**

53.     In <u>Bearden</u>, payment of an actual fine imposed as a conviction for an actual criminal violation was held to be unconstitutional under the Equal Protection Clause of the Fourteenth Amendment, without hard proof that a debtor actually has money to pay.

54.     If a State determines a fine or restitution to be the appropriate and adequate

penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it. *Williams v. Illinois*, 399 U. S. 235; *Tate v. Short*, 401 U. S. 395.

55.     For Plaintiff not being able to pay $6,995 actually owed, apparently, by his client, Blanca Mijares, who owes reimbursement or contribution to the Plaintiff, Defendant Vaughn and Solution Painting, Inc., have asked Defendant Judge Gardiner to ban the Plaintiff – for non-payment of a civil debt owed to a private party – from being able to practice law in Fairfax County, Virginia,  [3] and other irrelevant penalties aimed maliciously at Plaintiff's occupation, in violation of Va. Code §§ 18.2-499 and 500.

56.     The Defendants do not and cannot offer any legal authority or precedent for their use of imprisonment and contempt of court to collect a private debt.

57.     The Defendants do not and cannot offer any legal distinction between the civil debt they say is owed by the Plaintiff to a private, third party and the ordinary debts owed by hundreds of thousands of Virginians and millions of Americans nation-wide.  It cannot be overlooked that the Defendants have made no attempt to distinguish this debt from any other.

58.     Plaintiff would not be contesting the Defendants' claim in the State Court, except that the Defendants propose to violate federal law in imprisoning the Plaintiff for not being able to pay a civil debt to a private party, but also to establish a precedent that would allow hundreds of thousands of Virginians to be similarly punished with imprisonment for merely being unable to pay a civil debt.

59.     For example, a Pew Charitable Trust studied nearly 297,000 debt cases in Virginia district and circuit courts decided between April 2015 and May 2016.  See. https://www.pewtrusts.org/en/research-and-analysis/reports/2020/05/how-debt-collectors-are-

---

[3]     Fairfax County, Virginia is a County larger in population than eight states.

transforming-the-business-of-state-courts

60.     One year of only debt-collection cases alone would add some sizeable portion of 297,000 motions for an order to show cause to hold debtors in contempt for not paying the debt instantly.

61.     This estimate for that one-year period does not include other money judgments of courts such as personal injury, car accidents, torts, assault, etc.

62.     Therefore, the courts of Virginia would be barraged by hundreds of thousands of motions for show cause orders if creditors could start throwing debtors in jail to try to coerce them to find money to pay, probably by extorting innocent family members and friends who are not legally responsible for those debts.

63.     Furthermore, the Defendants overtly abandoned any effort to find any bad faith as a necessary basis for a finding of contempt.

64.     The Defendants offered no evidence whatsoever that the Plaintiff had then or has now the ability to pay $6,995.

65.     The Defendant Judge Gardiner openly admits that the Plaintiff and his client Blanca Mijares denied the ability to pay the $6,995 money judgment in his July 16, 2020, letter opinion. See **Exhibit 10**, attached.

66.     Judge Gardiner openly admits in his July 16, 2020, letter opinion that Plaintiff Jonathon Moseley provided evidence – with no contrary evidence at all – that his account was overdrawn and had suffered a notice of insufficient funds to cover a bank check.

67.     Thus, the Circuit Court confesses openly in its July 16, 2020, letter opinion that it had absolutely no evidence of any ability of the Plaintiff or his client to pay but it did have their denial and evidence that they could not pay the $6,995 amount ordered.

68.     Thus, the Defendants are attempting to find contempt of court – bad faith – while admitting a complete and total absence of any indicia or evidence of bad faith.

69.     In doing so, the Circuit Court commits the classic error of confusing shifting the burden of production with shifting the burden of proof.

70.     Clearly, Plaintiff does not have the money to pay the asserted amounts if he remained in jail for six days already, including over his birthday.[4]

71.     Had Defendant Vaughn not pursued a misguided, unlawful, and illogical course of action, but had instead merely waited to collect the original debt using Virginia's established laws and procedures, the Plaintiff would have been working to make money, and using some of it to pay down various debts as provided by law.

72.     The Defendants now seek to have the Plaintiff imprisoned further for an indefinite period for not paying the same civil debt payable to a private, third party, almost doubled between January 15, 2020, and July 16, 2020 -– that is, close to a 200% rate of interest – for not paying what the Plaintiff is not able to pay.

73.     It is of course fundamentally impossible to prove a negative.   Under the Defendants' abuse of the contempt power in violation of the legislative structure and intent, there would never be any way to prove that a debtor does not have cash under the mattress or other funds hidden somewhere.

74.     Here, the Plaintiff and his client Blanca Mijares averred that they cannot pay.

75.     Plaintiff lost six days of productive work and liberty while imprisoned, and has

---

[4]     The Defendants may be misled by deluded speculation that they can extort money from Plaintiff's family, without understanding that Plaintiff's sister is divorced and barely has enough money to care for their 87-year old father in serious decline and his brother is in only the early stages of trying to start a business without a job.  Thus Defendants are wasting gigantic amounts of time and energy on the ill-informed delusion that Plaintiff's family has any money to loan him, not previously already tapped out in the past.

lost more than 50 hours of work time responding to these illegal and outrageous attacks and actions.

76.     Starting on October 22, 2020, the Defendants are likely to continue to increase their liability and exposure by – as explicitly requested by the Vaughn Defendants – further jail time imposed upon the Plaintiff for not being able to pay a civil debt payable to a non-governmental private party.

77.     Plaintiff previously clarified that he cannot pay and provided a document from his bank showing a check bounced for insufficient funds.

78.     If the defective January 15, 2020, Order can be construed as ordering anyone to pay any money (being severely and doubly in the passive voice), $5,820.50 of the $6,995 is owed by Blanca Mijares, the Plaintiff's client, not by the Plaintiff Moseley.

79.     The Defendants are just guessing whom they imagine has money and who does not.  This violates Bearden.

80.     Yet, Defendant Vaughn and Defendant Solution Painting, Inc. have *IGNORED* collecting any money from the actual plaintiff in the original case Blanca Mijares and have sought to punish with contempt and imprisonment *only* her attorney Jonathon Moseley.

81.     After Plaintiff Moseley had already been arrested on August 28, 2020, on August 31, 2020, his client Blanca Mijares filed for bankruptcy.  See **Exhibit 9**, attached.

82.     However, the Defendants had taken all of these actions already, before Blanca Mijares filed for bankruptcy.

83.     Thus, the Defendants made the deliberate, knowing choice to hold Plaintiff Moseley in contempt and imprison him, while ignoring his client Blanca Mijares as being arguably a joint and several co-debtor, responsible for over 84% of the $6,996 debt.

15

84. Why did the Defendants pursue and imprison Blanca Mijares' attorney, Plaintiff Moseley, but not Blanca Mijares who was primarily responsible for any sanctions?

85. ***DOES IT MATTER WHAT THE DEBT IS ABOUT?  The Defendants have offered no distinction under the law or any precedent based on the type of debt.  But out of an abundance of caution, let us clarify that the nature of the debt offers no excuse for their constitution violation.***

86. On January 15, 2020, Judge Gardiner issued an order attached as **Exhibit 7** which – for no discernible reason, ordered ***SOMEONE*** – not identified – to pay attorney's fees to the Defendant there Solution Painting, Inc. various sums for various actions totaling $6,996.

87. The order in Exhibit 7, however, does not say that anyone in particular owes this money, not even as joint or several liability.

88. In violation of the U.S. Supreme Court's precedent of <u>Bearden v. Georgia</u>, the Defendants are trying to imprison Blanca Mijares' attorney because they are guessing – not proving – who has the ability to pay a debt and who doesn't.

89. Guessing does not comply with <u>Bearden.</u>

90. ***Therefore, it is not clear that either Plaintiff Jonathon Moseley or his client Blanca Mijares owe any money at all, nor how much is owed by which.***

91. ***Note:  the following allegations are presented to inform the Court that there is no excuse for the constitutional violations based upon any argument about the nature, purpose, or origins of the debt, and the Defendants cannot argue about why the debt arose.***

92. Informing the Court about the nature and origin of the debt ***DOES NOT*** mean that this court is being asked to second guess the state court's decision, but only to help the Court in understanding if the characterization of the debt changes anything in the constitutional violation.

93.     This also highlights the violation of <u>Bearden</u> in proving that the Defendants are speculating without evidence, trying to imprison the Plaintiff attorney Moseley based on nothing but guessing that maybe the attorney has money to pay when the client Blanca Mijares probably does not.

94.     **Guessing violates <u>Bearden.</u>**

95.     A court speaks through its orders, and the order in Exhibit 7 does not say that anybody actually owes any money.

96.     As such, the January 15, 2020, must be interpreted as a purely precatory, aspirational hope, suggestion, or wish, or perhaps a morally persuasion suggestion, and not an actual court judgment of any actual debt owed.[5]

97.     The Vaughn Defendants filed an "I don't believe you"  motion for sanctions – *see* **<u>Exhibit 13</u>**, *attached*, in which Defendant Vaughn attacked ***the FACTUAL ALLEGATIONS brought by Blanca Mijares as being FACTUALLY UNTRUE.***  See Exhibit 13.

98.     Contrasting Exhibit 13 with the January 15, 2020, at Exhibit 7, it is clear that the debt at issue for which Plaintiff's imprisonment is sought by the Defendants ***WAS NOT A GRANT OF THE MOTION FOR SANCTIONS (Exhibit 13).***[6]

99.     The "I don't believe you" motion for sanctions (Exhibit 13) asked the Court to find that Blanca Mijares' claims were factually untrue, even though no evidence was ever heard, and the jury was waiting out in the hallway, never called upon to hear or decide any factual

---

[5]     In June, 6 months later, Plaintiff raised this question in a contempt hearing.  However, by then the January 15, 2020, Order had become final and the Fairfax County Circuit Court no longer had jurisdiction to modify the January 15, 2020, Order.  Even though Plaintiff does not recall Judge Gardiner actually attempting to address this deficiency, if Plaintiff's recollection is incorrect and Judge Gardiner did make the attempt, Judge Gardiner no longer had jurisdiction 5 months later to alter the January 15, 2020, Order.

[6]     Which was part of the problem with appealing the out-of-the-blue January 15, 2020, Order, because it was not based upon the Vaughn Defendant's motion for sanctions.

distpues.

100.    By contrast, the January 15, 2020, Order (issued without a hearing) in Exhibit 7 did not address any of the claims or arguments of the motion for sanctions and did not address in any way whether Blanca Mijares' factual allegations were true or false.

*101.    **Therefore, the only guide for what this debt is about is the last full paragraph of the second page of the January 15, 2020, Order (Exhibit 7).***

*102.    **Because the January 15, 2020, Order, does not respond to nor grant the motion for sanctions (Exhibit 13), there is nothing to guide us but the terms of the January 15, 2020, alone, standing by itself.***

103.    To understand whether the nature of the debt changes the constitutional analysis in anyway, this Court must understand that the opening of the trial on November 20, 2019, was interrupted and sandbagged by the Vaughn Defendants' motion to dismiss for judicial estoppel.

104.    Defendant Gardiner granted the Vaughn Defendants' motion to dismiss the case under judicial estoppel at the opening of the trial, even though it was untimely under the Fairfax County Circuit Court's briefing and motions practice rules and in spite of the request that the matter be set out for later hearing after proper briefing.

105.    Therefore, the trial on November 20, 2019, did not occur ***EXCLUSIVELY*** because the Vaughn Defendants sought – and enjoyed receiving – the dismissal of the trial on their motion to dismiss the case.

106.    Then in the January 15, 2020, Order, Judge Gardiner admitted that the motion to dismiss was in error, and judicial estoppel did not apply under the law.

107.    Thus, the Vaughn Defendants received a dismissal of the case on the morning of trial that they were not entitled to, exclusively at their own initiative.

108.    Therefore, the Vaughn Defendants cannot complain about the November 20, 2019, trial not occurring on that day because they sought and received a dismissal based on their own motion and for no other reason.

109.    No other motion was made before or during the scheduled trial (which was cancelled by Judge Gardiner) on November 20, 2019.

110.    The last full paragraph on page 2 of the Order in Exhibit 7, lists various actions which – for no discernible reason – ***SOMEONE*** (we don't know who, if anyone) is ordered to pay to Solution Painting, Inc. nearly all of which clearly relate to Plaintiff's client Blanca Mijares – not to the Plaintiff as her lawyer:

a) $450 for 1 hour of research to discover Plaintiff's omission to Interrogatory No. 4 – *even though Plaintiff attorney highlighted to Defendant Vaughn as Solution Painting's attorney on November 4, 2020, that the answer to Interrogatory No. 4 was inadequate, and Vaughn had the opportunity the following day during the November 7, 2020, deposition of Blanca Mijares to ask her about her interrogatory answer.  See, Exhibit 8.*

b) $2,2025 for 4.5 hours of preparation and court appearance on November 20, 2019 – *even though November 20, 2019, was the previously scheduled trial, which Blanca Mijares had sought to postpone and the Vaughn Defendants there opposed a continuance. Thus, the preparation for trial would have been required in any event.*

c) $855 for 1.9 hours of work regarding sanctions on November 20, 2019, and $675 for 1.5 hours drafting motions for sanctions on November 21, 2019  – *even though the Vaughn Defendants' motions for sanction was __NOT__ granted.   The motion for sanctions was an "I don't believe you" attack on Blanca Mijares' allegations in her originally pro se Complaint attacking her allegations as factually untrue.  Judge Gardiner never ruled on the truth or falsehood of Blanca Mijares' factual allegations, thus the Vaughn Defendants' motion for sanctions was not granted.  Judge Gardner ordered sanctions for unidentified reasons, not for the reasons asserted in the Vaughn Defendants' motion for sanctions.*

d) $1,800 for 4 hours for Calendar Control appearances and for emails – *even though this was to schedule the Vaughn Defendants' "I don't believe you" motion for sanctions which was never ruled on.*

e) $225 for 0.5 hours preparing a suspension order – *even though again*

19

*the Vaughn Defendants motion for sanctions was about Blanca Mijares' factual allegations of her originally pro se Complaint, on which Judge Gardiner never rendered any opinion as to whether her allegations were true or false.*

f)   $315 for .7 hours to call Attorney Havrilak regarding Moseley's suspension and conduct research on sanctions – *even though again the Vaughn Defendants motion for sanctions was about Blanca Mijares' factual allegations of her originally pro se Complaint, on which Judge Gardiner never rendered any opinion as to whether her allegations were true or false.*

g)   $650 for the cost of the Interpreter for trial on November 20, 2019 – *even though the trial was interrupted by the Vaughn Defendants' own untimely motion to dismiss and the Interpreter was an optional choice by the Vaughn Defendants' to bring their own witness requiring translation, which the Vaughn Defendants interrupted by their own motion to dismiss.*

111.    Thus, if we were to try to fantasize some assignment of these amounts as being owed by anyone in particular, at most only about 30% of the $315 for .7 hours to call Attorney Havrilak regarding Moseley's suspension and conduct research on sanctions and maybe 60% of the $1,800  for 4 hours for Calendar Control appearances and for emails – or a total of $1,174.50 – could possibly be attributed to Plaintiff Jonathon Moseley rather than to his client Blanca Mijares.

112.    Therefore, the Defendants cannot constitutionally imprison the attorney Jonathon Moseley for his client Blanca Mijares' debt.

113.    Note, however, that the order does not state that anyone must pay the sums identified or specify or identify whom must pay the sums identified.

114.    Without anyone being specified, it should be assumed that the sums would be due from the plaintiff in that lawsuit, Blanca Mijares.

115.    There is nothing in the order making the Plaintiff Moseley liable to pay any of the sums identified in the January 15, 2020, Order.

116.     Again, the Vaughn Defendants' motion for sanctions was that Blanca Mijares' allegations were factually untrue.

117.     Under the plain terms of the January 15, 2020, Order, the Plaintiff Moseley is not liable or responsible to pay anything.

118.     While Plaintiff Jonathon Moseley in fact does not owe any money, because no one is identified as being liable to pay the amounts in the January 15, 2020, Order, the maximum amount one could possibly attribute to Plaintiff Moseley would be no more than $1,174.50.

119.     The Defendants have the burden of proving that Blanca Mijares' factual allegations in her Complaint are false, which they have never done.

> Factual allegations, with limited exceptions not relevant here, are established at trial. No trial was held in this case. If defendant claims that no conceivable basis existed for the subject allegations, the burden is on defendant to prove it.

Lankford v. Moore's Marine, Inc., 22 Va. Cir. 295, 1990 WL 751384 (Richmond Cir. Ct. 1990).

> Of course, the best way to determine the merits of plaintiff's claim is a trial. Otherwise, the court has each counsel's statement about the case and their respective views of what the doctors have said given the sequence of events for each accident and the claimed injury, recovery, etc. Since it is apparent that the parties cannot agree on the facts there are no facts before the court on which to make a judgment on the sanctions motion. Like many things in life, especially in law, things are not as readily apparent as they may seem to the proponent of a position when other things, including the views of the opposition, are considered. I cannot decide the sanctions motion on the present state of the record. For this reason the sanctions motion is denied.

Allen v. Taylor, 1998 WL 972311 (Richmond Cir. Ct. 1998).

> Evidence is presented at trial, not in discovery. The fact that plaintiff had not discovered evidence in her favor at the time she responded to discovery does not mean that she might not be able to present such evidence when the case was tried. Indeed, in light of the fact that deposition testimony cannot be the basis for summary judgment, it would be cruelly ironic if such testimony could form the basis for sanctions.

Domen v. Sugarman, 54 Va. Cir. 176, 2000 WL 1752627 (Richmond Cir. Ct. 2000).

21

120.     Sanctions are not appropriate where the facts the Defendant claims are untrue must be decided by a jury.  Donald Wayne Lankford v. Moore's Marine, Inc., 22 Va. Cir. 295, 1990 WL 751384 (Richmond Cir. Ct. 1990);  Rothell v. Casey , 1990 WL 751111 at *4 (Va. Cir. Ct.) ("Here, Casey asks the court to make these determinations before any evidence has been taken in the case, prior to any discovery, wholly on the basis of the initial pleading, an affidavit, and arguments of counsel.  …  the court cannot determine now that her claim is groundless, or frivolous, or interposed for an improper purpose.").

121.     Therefore, there is no basis for assigning any of the debt to Plaintiff Moseley rather than to his client Blanca Mijares.

122.     Therefore, Defendants are violating Bearden v. Georgia by just arbitrarily speculating that they can get the money from the attorney Plaintiff Moseley even though his client Blanca Mijares is actually responsible for the debt.  Rather than proving that Plaintiff Moseley has any money, they are just guessing.

123.     The Plaintiff's injuries, including the deprivation of his legal rights and legally protected vested property rights, are proximately related to the illegal conduct of Defendants, each and every one of them, jointly and severally.

124.     The law presumes generally that a person intends the obvious results of their actions.

125.     **Meanwhile, Judge Gardiner and all of the Defendants acted completely outside of the jurisdiction of the Fairfax County Circuit Court.**

126.     **The actions at issue were *ultra vires*.**

127.     **Therefore, personal liability attaches.**

128.     **The General Assembly of Virginia has stripped Virginia courts of any power**

**to use contempt of court or especially imprisonment to collect or enforce a debt.**

129.   Va. Code §§ 8.01-467 and 8.01-474 authorize the issuance of a writ of *fieri facias* for the purpose of the collection of a court-ordered debt.

130.   However, other writs relating to the collection of a debt are explicitly abolished in Virginia by legislation.

131.   Collectively the writs abolished demonstrate that the contempt power of a Virginia court cannot be used to enforce payment of a money judgment or court-ordered debt.

132.   For example, common law writs for imprisonment or detention of a debtor and many other types of orders against a debtor have all been abolished in Virginia.

133.   Collectively, these prohibitions abrogate use of the contempt power for collection of a money judgment debt.

134.   Va. Code § 8.01-467 explicitly prohibits the use of contempt power to enforce a debt, even one determined by a court order:

> **§ 8.01-467. What writs may not issue.**
>
> No writ of levari facias, writ of extendi facias, writ of elegit, writ of capias ad satisfaciendum, or writ of distringas shall be issued hereafter

135.   A writ now **<u>*PROHIBITED*</u>**  by Virginia Statute in Va. Code § 8.01-467 of a **writ of** *extendi facias* **is** defined in Black's Law Dictionary Free Online Dictionary at

www.thelawdictionary.org  as *(emphasis added):*

> A writ of execution issuable in England against a debtor to the crown, **<u>which commands the sheriff to "take" or arrest the body,</u>** and "cause to be extended" the lands and goods of the debtor. Man. Exch. Pr. 5.

136.   ***Thus, the primary effect of a contempt of court is explicitly forbidden as an action for the collection of a debt.***

137.    Virginia courts are **_FORBIDDEN_** by statute from incarceration of any debtor in furtherance of collecting an ordinary debt.

138.    A writ now **_PROHIBITED_**  by Virginia Statute in Va. Code § 8.01-467 of **a _writ_ of _levari facias_** is defined in Black's Law Dictionary Free Online Dictionary at

www.thelawdictionary.org  as

> Lat. A writ of execution directing the sheriff to cause to be made of the lands and chattels of the judgment debtor the sum recovered by the judgment. Pentland v. Kelly, 6 Watts & S. (Pa.) 4S4. Also a writ to the bishop of the diocese, commanding him to enter into the benefice of a judgment debtor, and take and sequester the same into his possession, and hold the same until he shall have levied the amount of the judgment out of the rents, tithes, and profits thereof.

139.    A writ now **_PROHIBITED_**  by Virginia Statute in Va. Code § 8.01-467 of a **writ of _elegit_** is defined in Black's Law Dictionary Free Online Dictionary at

www.thelawdictionary.org  as

> (Lat. lie has chosen.) This is the name, in English practice, of a writ of execution first given by the statute of Westm. 2 (13 Edw. I. c. IS) either upon a judgment for a debt or damages or upon the forfeiture of a recognizance taken in the king's court. It is so called because it is in the choice or election of the plaintiff whether he will sue out this writ or a /fi,. fa. By it the defendant's goods and chattels are appraised and all of them (except oxen and beasts of the plow) are delivered to the plaintiff, at such reasonable appraisement and price, in part satisfaction of his debt. If the goods are not sufficient, then the moiety of his freehold lands, which be had at the time of the judgment given, are also to be delivered to the plaintiff, to hold till out of the rents and profits thereof the debt be levied, or till the defendant's interest be expired.  During this period the plaintiff is called "tenant by elegit." and his estate, an "estate by elegit." This writ, or its analogue, is in use in some of the United States, as Virginia and Kentucky. See 3 Bl. Comm. 418; Ilutcheson v. Grubbs, 80 Va. 254; North American F.Ins. Co. v. Graham, 5 Sandf. (N. Y.) 197.

140.    A writ now **_PROHIBITED_**  by Virginia Statute in Va. Code § 8.01-467 of **a _writ_**

*of capias ad satisfaciendum* is defined in Black's Law Dictionary Free Online Dictionary at

www.thelawdictionary.org as

> A writ of execution, (usually termed, for brevity, a "ca. sa.,") which a party may issue after having recovered judgment against another in certain actions at law. It commands the sheriff to take the party named, and keep him safely, so that he may have his body before the court on a certain day. to satisfy the party by whom it is issued, the damages or debt and damages recovered by the judgment. Its effect is to deprive the party taken of his liberty until he makes the satisfaction awarded. 3 Bl. Comm. 414, 415; 2 Tidd. Pr. 993. 1025; Litt.

141.    A writ now **_PROHIBITED_**  by Virginia Statute in Va. Code § 8.01-467 of a *writ*

*of distringas* **is** defined in Black's Law Dictionary Free Online Dictionary at

www.thelawdictionary.org as

> In English practice. A writ directed to the sheriff of the county in which a defendant resides, or has any goods or chattels, commanding him to distrain upon the goods and chattels of the defendant for forty shillings, in order to compel his appearance. 3 Steph. Comm. 567. This writ issues in cases where it is found impracticable to get at the defendant personally, so as to serve a summons upon him. Id.  A distringas is also used in equity, as the first process to compel the appearance of a corporation aggregate. St. 11 Geo. IV. ar.d 1 Wm. IV. c. 36.A form of execution in the actions of detinue and assise of nuisance. Brooke, Abr. pi.26; Barnet v. Ihrie, 1 Rawle (Pa.) 44.

142.    Therefore, the General Assembly has clearly manifested its intent to authorize the use of the writ of *fieri facias* as the sole mechanism in the Commonwealth for the collection of a debt, while painstakingly prohibiting (and somewhat repetiatively so) all other methods for collecting on a debt, while explicitly repealing all other writs for collection of a debt.

143.    Similarly, in addition, the General Assembly of Virginia has abrogated the common law with regard to the collection of any debt by enacting statutes that precisely define the methods for collecting on a debt and the circumstances and limitations under which some portion of a debt may be collected, including limitations on the rate at which a reasonable amount of a debt may be collected at a reasonable rate, such as in garnishment of wages no more

than 25% of the amount of wages in excess of minimum wage.

144.    The General Assembly has enacted an extensive network of statutes and provisions in Va. Code §§ 8.01-466  through  8.01-525, and elsewhere in the statutes of Virginia.

145.    By this network of statutes, the General Assembly has manifested its intent to provide a comprehensive and balanced network of statutes and procedures to comprehensively occupy the field concerning the collection of debts.

146.    Even non-judicial actions like foreclosures are explicitly regulated by statute, including Va. Code §§ 55.1-320 through 55.1-345.

147.    See also Va. Code § 16.1-100 (Additional executions) and Va. Code § 16.1-98 through Va. Code § 16.1-105.

148.    Other mechanisms such as a confessed judgment are precisely regulated by statute in Virginia, such as in Va. Code §§ 8.01-431 through 8.01-441.

149.    Therefore, the comprehensive regulation of the collection of debts demonstrates the General Assembly's intent and attempt to completely replace the common law and any other unrelated statute and occupy the field with its structure for the collection of debts.

150.    The following presents the rule as a double-negative, but the principle must be unpacked to its affirmative meaning:

> "When an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to the rule." Boyd v. Commonwealth , 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988). Statutes are to be read "in conjunction with the common law, giving effect to both unless it clearly appears from express language or by necessary implication that the purpose of [a statute] was to change the common law." Jenkins v. Mehra , 281 Va. 37, 44, 704 S.E.2d 577, 581 (2011) (citations and internal quotation marks omitted).

151.    Here, the legislation by the General Assembly as a comprehensive network of

statutes dealing with the collection of a debt ordered as a money judgment by a court **_DO_**

"encompass the entire subject covered by the common law."

152.    One may ask the question the other way around:  In reviewing all of the statutes

enacted by the General Assembly, is there any aspect of the collection of a debt _NOT_ addressed

by the General Assembly's statutory scheme?  Nothing appears to be missing.

153.    Therefore, the General Assembly has occupied the field and therefore abrogated

the common law including the use of contempt for the collection of a debt.

154.    The Circuit Court based its finding of contempt and use of contempt upon

Alexander v. Alexander, 406 S.E.2d 666, 12 Va.App. 691 (Va. App. 1991).  However, this case

was "This domestic relations appeal concerns an award of child support. "

155.    Therefore, Alexander v. Alexander is irrelevant, where there is an explicit

exception established for domestic relations cases.

156.    The Circuit Court also based its finding of contempt and use of contempt upon

Fisher v. Salute, 657 S.E.2d 169, 51 Va. App. 293 (Va. App. 2008), citing to the passage:

> It is axiomatic that a court may find a party in contempt for "disobedience or
> resistance . . . to any lawful process, judgment, decree or order of the court." Code
> 18.2-456(5); see also Higginbotham v. Commonwealth, 206 Va. 291, 294, 142
> S.E.2d 746, 749 (1965) ("It has long been recognized and established that a court
> is invested with power to punish for contempt, both by the inherent nature and
> constitution of the court and by [statute]." (internal citations omitted)). "The
> power to punish for contempt is inherent in, and as ancient as, courts themselves.
> It is essential to the proper administration of the law, to enable courts to enforce
> their orders, judgments and decrees." Carter v. Commonwealth, 2 Va.App. 392,
> 395, 345 S.E.2d 5, 7 (1986).

157.    However, "the proper administration of the law" speaks to the conduct of a

pending case, not to the post-judgment collection of a debt.

158.    A court has no further role in administration or conduct of a case for payment of a

debt after the case is over.

159.    Therefore, whether, when, or how a money judgment is paid cannot in any way affect the administration of a court.

160.    By contrast, in <u>Fisher v. Salute</u>, the Court ordered the removal of a boat dock deemed to be dangerous such that "the son of Paul C. Salute was electrocuted and drowned in lake waters near a boat dock owned by Fisher. It was alleged that Fisher had improperly installed, maintained, and operated an electrical system on his boat dock and that, as a result of this negligence, the boy was killed."

161.    In <u>Fisher v. Salute</u>, the Court explicitly held the case open and not final for the express purpose of supervising the removal of the dangerous dock.

162.    Clearly, removal of a dangerous dock was an action which could not be substituted with the payment of money and was not embraced within the statutory scheme provided by the General Assembly for the collection of the debt.

163.    The *Fisher v. Salute* case relies upon <u>Higginbotham v. Com.</u>, 206 Va. 291, 142 S.E.2d 746 (1965) in which an attorney committed contempt in open court during the jury trial by exhibiting evidence to the jury in violation of an order not to do so.  The attorney was fined $250 in 1965.  The case had no relevance to the question here about how the $250 may be collected.

164.    Similarly, the *Fisher v. Salute* case also relies upon <u>Carter v. Commonwealth</u>, 96 Va. 791, 45 L.R.A. 310, 32 S.E. 780 (1899) , which again offers no relevance here.  <u>Carter</u> involved a plaintiff who asked for a continuance by sending telegrams allegedly lying about being sick with typhoid fever.   The contempt had nothing to do with any post-judgment compliance or payment of a debt.

165.    Furthermore, where statutes of specific, narrow application directly speak to a

topic, those statutes control over statutes or precedents of general reach:

166.    We must apply Code § 15.1-549 in this appeal because it is a statute of specific

application which takes precedence over Code § 8.01-382, a statute of general application.

> "'[W]hen one statute speaks to a subject in a general way and
> another deals with a part of the same subject in a more specific
> manner, ... where they conflict, the latter prevails.' " Dodson v.
> Potomac Mack Sales & Service, 241 Va. 89, 94-95, 400 S.E.2d
> 178, 181 (1991) (quoting Virginia Nat'l Bank v. Harris, 220 Va.
> 336, 340, 257 S.E.2d 867, 870 (1979)); City of Winchester v.
> American Woodmark, 250 Va. 451, 460, 464 S.E.2d 148, 153
> (1995).

County of Fairfax v. Century Concrete Services, Inc., 254 Va. 423, 492 S.E.2d 648 (1997)

167.    Thus the specific statutes directly governing how debts are collected must prevail

over and supersede general statutes or common law about orders concerning the administration

of courts or trials.   The Circuit Court must defer to and comply with the statutes named above

that precisely define the mechanisms for collection of a debt.

## VI.    <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>
***Injunction Against Imminent Deprivation of Civil Rights Under Color of State Law***

168.    Plaintiff repeats and re-alleges each and every allegation of the foregoing

paragraphs and incorporates all of these allegations herein for the purpose of and in support of

this Cause of Action as if fully set forth herein.

169.    Among other things, 42 U.S.C. § 1983 providing for a civil right of action by

private parties, when applied to an injunction, provides for the exception that:

> that in any action brought against a judicial officer for an act or
> omission taken in such officer's judicial capacity, injunctive relief
> shall not be granted unless a declaratory decree was violated or
> declaratory relief was unavailable.

170.    Here, in this case, declaratory relief is not available in the short-term because at the urging and request of the Vaughn Defendants Defendant Judge Gardiner is eager to impose punishment including imprisonment for not being able to pay a civil debt payable to a private party, including at a scheduled October 22, 2020, 10 AM, hearing for that purpose.

171.    While in the long run, the Court may have time to issue a declaratory injunction, in the short-term a temporary injunction or *ex parte* temporary restraining order

172.    All of the Defendants are in a mad rush – even though they thoroughly understand that no money exists to fulfill the dubious pseudo-debt – to scramble rapidly toward trying to get money that does not exist.

173.    Here, imprisonment and the loss of constitutionally protected liberty is an irreparable harm that can never be fully remedied by an order of money damages. *See Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (a constitutional violation and loss of constitutional protections "'for even minimal periods of time, unquestionably constitutes irreparable injury'") (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)); *see also Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 53 (D.D.C. 2002) (deprivation of constitutional protection "is an undeniably substantial and irreparable harm").

174.    Here, the Plaintiff has a likelihood of success on the merits, where the Supreme Court of Virginia has already agreed  in Wright v. Matthews, 209 Va. 246, 163 S.E.2d 158 (1968), held, as binding precedent today, that a court fee payable to the court (commonly referred to as "court costs") even in a criminal prosecution cannot be the basis for imprisoning a convicted criminal who has not paid his court costs.

175.    Thus, a civil debt payable not to the government or court but to a private party cannot be the basis of imprisonment for non-payment of the debt where even a fee related to a

criminal conviction cannot be constitutionally enforced by imprisonment.

176.    Here, it is in the public interest for this Court to pause any activity seeking to imprison the Plaintiff, because the Defendants have offered no distinction or rationale as between imprisoning him for a debt or imprisoning hundreds of thousands of other debtors, especially during an economic crisis in which an estimated 30 million Americans lost their jobs due to a world-wide pandemic.

177.    Every official debt is a court order, even if called a judgment.

178.    Therefore, there is no distinction between what these Defendants are doing and the obvious trend that will result of threatening hundreds of thousands of ordinary civil debtors with imprisonment in jail, especially by holding up the example of an attorney being jailed.

179.    Here, there is no prejudice to the Defendants because the Vaughn Defendants could have used the debt collection mechanisms provided by the Virginia General Assembly but merely chose to be jerks instead of doing what the General Assembly provided for by statute.

180.    Those debt collection methods set up by Virginia statute balance the availability of actual, real money against the long-term collection with interest at the statutory rate of a debt.

181.    The Vaughn Defendants seek to violate the law because they don't want to be limited by the availability of actual, genuine funds to pay the debt over time as provided by Virginia statute.

182.    The Vaughn Defendants further seek to violate the law by adding additional fines and fees on to the original principal amount of the debt in excess of the statutory rate of interest.

183.    Thus, the Defendants have no prejudice where the Vaughn Defendants have chosen to eschew and avoid the debt collection mechanisms painstakingly provided to them by the General Assembly of Virginia.

184.     Therefore, an *ex parte* temporary restraining order and/or temporary injunction must be entered while this Court considers these matters thoughtfully, conveniently, and methodically, not hindered by rushing.

## SECOND CAUSE OF ACTION
### *Declaratory Judgment*

185.     Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs and incorporates all of these allegations herein for the purpose of and in support of this Cause of Action as if fully set forth herein.

186.     Plaintiff seeks declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure ("FRCP") and 28 U.S.C. §2201, *et seq.* to clarify Plaintiff's rights to not be arrested and imprisoned for being unable to pay a civil debt owed to a private, third party and to declare the obligations and to guide Plaintiffs in obeying the law without surrendering or sacrificing his constitutional rights, civil rights, and legal rights.

187.     Pursuant to 28 U.S.C. § 2201, declaratory judgment under federal law is available "In a case of actual controversy within its jurisdiction," such that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Moreover, "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  *Id.*

188.     Here, while there should not be any dispute, the Defendants adamantly believe and insist – and this has been discussed in court hearings – that a civil debt payable to a private party, not payable to the government of the court, can be collected or enforced by throwing a debtor into jail for non-payment, in violation of <u>Wright v. Matthews</u>, 209 Va. 246, 163 S.E.2d 158 (1968).

189.     Here, while there should not be any dispute, the Defendants adamantly believe and insist – and this has been discussed in court hearings – that they can merely speculate or assume that a debtor has money to pay a debt without any proof or evidence, in violation of Bearden v. Georgia, 461 U.S. 660 (1983)

*190.*     ***The Defendants have been fully informed of these matters, yet are actually, genuinely, fervently, and adamantly in dispute on these legal questions.***

191.     Here, the Defendants betray their violation of Bearden by merely guessing that Blanca Mijares' attorney might have money to pay his client's debt.

192.     Exposing the constitutional violation and unlawful approach, the Defendants have not sought to collect the debt from Blanca Mijares but instead from her attorney.

193.     There is nothing in the January 15, 2020, Order that makes anyone obligated to pay anything, being in double or triple layers of passive voice.

194.     However, there is nothing in the January 15, 2020, Order making Plaintiff Moseley responsible for the debt, or even creating any joint or several liability.

195.     So, why – as a statement not a question – are the Defendants seeking to imprison the attorney Moseley, but not the client actually responsible, Blanca Mijares?

196.     (Note again that most of these actions by the Defendants pre-date Blanca Mijares' August 31, 2020, bankruptcy filing.)

197.     The itemized list of expenses identified in the January 15, 2020, order are almost entirely actions relating to the validity of Blanca Mijares' factual allegations.

198.     Again, the trial was scheduled to begin on November 20, 2019, but was interrupted by the Vaughn Defendants' untimely and unlawful (as later determined by Judge Gardiner) motion to dismiss for judicial estoppel.

199.    Thus, the only reason that the November 20, 2019, trial did not go forward was the Vaughn Defendants' motion to dismiss sprung at the 13th hour in violation of Fairfax County Circuit Court motion practice deadlines which Judge Gardiner granted over requests that the matter be set down for proper briefing and later hearing in an orderly matter.

200.    Yet, the Defendants have ignored any collection efforts against Blanca Mijares.

201.    Instead the Defendants seek to throw the attorney for Blanca Mijares, Plaintiff Moseley, in jail for Blanca Mijares not paying her debt.

202.    This demonstrates that the Defendants are merely speculating that Moseley must have money but Mijares does not.

203.    Speculation violates Bearden v. Georgia.

204.    Therefore, the Plaintiff seeks declaratory judgment to inform the actions of the parties of their legal powers and obligations that the Defendants' actions and further attempts to imprison the Plaintiff Jonathon Moseley and deprive him of his constitutionally protected liberty violate the Fifth Amendment, Thirteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

### THIRD CAUSE OF ACTION
*42 U.S.C 1983 Deprivation of Civil Rights Under Color of State Law*

205.    Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

206.    The Defendants' actions and their omissions with regard to their duties to act constitute knowing and intentional government action in deprivation of the Plaintiff's constitutionally protected right to liberty and the Defendants' actions and further attempts to imprison the Plaintiff Jonathon Moseley and deprive him of his constitutionally protected liberty violate the Fifth Amendment, Thirteenth Amendment, and Equal Protection Clause of the

Fourteenth Amendment of the U.S. Constitution.

207.    By the acts and omissions of the Defendants described above, the Defendants and each of them deprived the Plaintiff of his constitutional rights.

208.    At all times relevant to this Complaint, the Defendants and each of them acted willfully and intentionally to violate the Plaintiff's civil and constitutional rights and/or with reckless disregard of whether their conduct violated the Plaintiff's civil and constitutional rights.

209.    In the actions described above, the Defendants and each of them violated the provisions of 42 U.S.C. 1983 to the injury of the Plaintiff.

210.    The Defendants conspired with one another to violate the civil and constitutional rights of the Plaintiff and in so doing violated the provisions of 42 U.S.C. 1983 and 1985 to the injury of the Plaintiff.

211.    The Plaintiff has been harmed and damaged including in the loss of his liberty for six (6) days already, including the loss of income while being imprisoned, and fighting to establish the constitutional rights of himself and those similarly situated.

212.    The Plaintiff therefore demands his actual, compensatory, and consequential damages.

213.    The Plaintiff further demands punitive and/or exemplary damages to deter the Defendants' reckless disregard for constitutional rights in the future.

### **THIRD CAUSE OF ACTION**
*Fifth Amendment Violation*
*(Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics)*

214.    Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs and incorporates all of these allegations herein for the purpose of and in support of this Cause of Action as if fully set forth herein.

215.    Plaintiff and those similarly situated enjoy a liberty interest in their persons of not being deprived of liberty by actions of the Government without due process of law, as guaranteed by the Fifth Amendment to the U.S. Constitution.

216.    These violations are compensable under *Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

> In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that the victim of an unconstitutional search by federal officers could recover damages from the officers in an action based directly on the fourth amendment. We think that, on the authority of Bivens, damages may be recovered from federal agents on a fifth amendment violation.
>
> Although Bivens does not speak directly to the availability of damage remedies derived from other constitutional rights, there would seem to be no principled basis for limiting Bivens to the fourth amendment. Bivens teaches that, at least where there are no special factors counselling hesitation, federal courts may grant traditional damage remedies, as well as equitable relief, to persons whose constitutional rights have been violated. 403 U.S. at 395-97, 91 S.Ct. 1999. Bivens indicated that such special factors might be present where a remedy might implicate questions of federal fiscal policy or where there was an "explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress." 403 U.S. at 397, 91 S.Ct. at 2005. Another factor might be whether the injury caused by the constitutional deprivation is one for which monetary compensation would normally be appropriate. 403 U.S. at 408-09, 91 S.Ct. 1999 (Harlan, J., concurring).
>
> We conclude that no special factors counsel hesitation in this case. Congress has provided no other remedy for the alleged denial of this fifth amendment right. The alleged denial does not raise a question of federal fiscal policy, and "(h)istorically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." Bivens, 403 U.S. at 395, 91 S.Ct. at 2004. We therefore hold that a damage action may be maintained against the marshals directly under the fifth amendment.

*Loe v. Armistead*, 582 F.2d 1291, 1293-1294  (4th Cir. 1978)

217.    Defendants, each and every one of them, violated the constitutional rights of the Plaintiff and those similarly situated by intentionally violating the rights of all those within the United States.

218.    By reason of the wrongful conduct of the Defendants, each and every one of them, jointly and severally, Plaintiff has suffered harm and has been damaged including in the loss of his liberty for six (6) days already, including the loss of income while being imprisoned, and fighting to establish the constitutional rights of himself and those similarly situated.

219.    The Plaintiff therefore demands his actual, compensatory, and consequential damages.

220.    The Plaintiff further demands punitive and/or exemplary damages to deter the Defendants' reckless disregard for constitutional rights in the future.

221.    As a direct and proximate result of the intentional and willful actions of Defendants, each and every one of them, jointly and severally, in their individual and official capacities, Plaintiff demands judgment be entered against the Defendants, including an award of compensatory and actual damages, punitive damages, equitable relief, reasonable attorneys' fees, pre-judgment interest, post-interest and costs, and an award in an amount to be determined by this Court. Plaintiff demands declaratory and injunctive and other equitable relief against all of Defendants to cease their illegal acts.

### FOURTH CAUSE OF ACTION
*(Intentional Infliction of Emotional Distress)*

222.    Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs and incorporates all of these allegations herein for the purpose of and in support of this Cause of Action as if fully set forth herein.

223.     This Cause of Action under Virginia state law is brought under *pendent* jurisdiction.

224.     Defendants' acts are willful malicious, deliberate, or were done with reckless indifference to the likelihood that such behavior would cause severe emotional distress and with utter disregard for the consequences of such actions.

225.     The very purpose and object of the Defendants' actions are to terrorize the Plaintiff into paying money that the Plaintiff does not have to pay, most likely on the speculation that the Plaintiff's friends or family might have money to loan the Plaintiff (they do not) or to maliciously punish the Plaintiff for not being able to pay a civil debt, out of pure anger, bitterness, and vengefulness.

226.     That is, where the Virginia General Assembly has provided a balanced mechanism for the collection of debts on a pace when money is available to pay them, the Defendants have chosen an intentionally and willfully abusive and malicious course of action to intentionally and willfully terrorize this Plaintiff and no doubt other civil debtors by example.

227.     If these Defendants can terrorize an attorney with unconstitutional imprisonment, the signal is clear to other debtors that they face similar punishment.

228.     Thus the very core, heart, and purpose of the Defendants' actions are the intentional infliction of emotional distress and not for any legitimate purpose (collection of debts being provided for by the General Assembly using other mechanisms).

229.     As a direct and proximate result of the intentional and willful actions of Defendants, each and every one of them, jointly and severally, in their individual and official capacities, Plaintiff demands judgment be entered against the Defendants, including an award of compensatory and actual damages, punitive damages, equitable relief, reasonable attorneys' fees,

pre-judgment interest, post-interest and costs, and an award in an amount to be determined by this Court. Plaintiff demands declaratory and injunctive and other equitable relief against all of Defendants to cease their illegal acts.

230.    As a direct, foreseeable and proximate result of the conduct of Defendant, each and every one them, jointly and severally, as alleged hereinabove, Plaintiff has suffered non-pecuniary damages in amounts to be proven at trial.

### FIFTH CAUSE OF ACTION
*(Civil Conspiracy in Violation of Va. Code 18.2-499 and 500)*

231.    Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs and incorporates all of these allegations herein for the purpose of and in support of this Cause of Action as if fully set forth herein.

232.    This Cause of Action under Virginia state law is brought under *pendent* jurisdiction.

233.    As detailed above, the Vaughn Defendants have acted in concert with the Defendant Gardiner to intentionally damage and injure the Plaintiff's occupation, career, business and reputation, for the purpose of terrorizing him into paying money he has no money to pay.

234.    Ironically, these attacks have prevented the Plaintiff from carrying out his occupation, career, and business in the pursuit of earning money to pay all of his debts.

235.    Va. Code 18.2-499 provides that

§ 18.2-499. Combinations to injure others in their reputation, trade, business or profession; rights of employees.

A. Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and

maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

B. Any person who attempts to procure the participation, cooperation, agreement or other assistance of any one or more persons to enter into any combination, association, agreement, mutual understanding or concert prohibited in subsection A of this section shall be guilty of a violation of this section and subject to the same penalties set out in subsection A.

C. This section shall not affect the right of employees lawfully to organize and bargain concerning wages and conditions of employment, and take other steps to protect their rights as provided under state and federal laws.

236.   Va. Code 18.2-500 provides that

§ 18.2-500. Same; civil relief; damages and counsel fees; injunctions.

A. Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, "damages" shall include loss of profits.

B. Whenever a person shall duly file a civil action in the circuit court of any county or city against any person alleging violations of the provisions of § 18.2-499 and praying that such party defendant be restrained and enjoined from continuing the acts complained of, such court shall have jurisdiction to hear and determine the issues involved, to issue injunctions pendente lite and permanent injunctions and to decree damages and costs of suit, including reasonable counsel fees to complainants' and defendants' counsel.

237.   Note that it is not required that every person involved in such matter share the

same motivations.

238.   As alleged above, where the Virginia General Assembly has specifically provided

mechanisms for collecting debts, the Defendants have instead insisted upon and pursued

malicious, vindictive, angry, punitive efforts in violation of the U.S. Constitution.

239.     As a direct and proximate result of the intentional and willful actions of Defendants, each and every one of them, jointly and severally, in their individual and official capacities, Plaintiff demands judgment be entered against the Defendants, including an award of compensatory and actual damages, punitive damages, equitable relief, reasonable attorneys' fees, pre-judgment interest, post-interest and costs, and an award in an amount to be determined by this Court. Plaintiff demands declaratory and injunctive and other equitable relief against all of Defendants to cease their illegal acts.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, each and every one of them, for the following:

I.     Issuance of an *ex parte* temporary restraining order against the violation of Plaintiff's constitutional rights until the Defendants are able to brief their responses, if any, to this claim and the Court may hear argument tin an orderly and thoughtful matter.

II.     Issuance of a temporary injunction against the violation of Plaintiff's constitutional rights pending final resolution of the case.

III.     Issuance of a permanent injunction against the violation of Plaintiff's constitutional rights at the conclusion of the case.

IV.     Award of attorneys fees pursuant to 42 U.S.C. 1988; The Civil Rights Attorney's Fees Awards Act of 1976."; *Lefemine v. Wideman*, 758 F.3d 551 (4th Cir. 2014).

V.     Award of direct and consequential damages in the amount of at least $50,000, including to compensate the Plaintiff for the actual deprivation of his liberty.

VI.     Award of punitive and/or exemplary damages in the amount of up to $250,000.

VII.       Award of court costs.

VIII.      Award of such other relief as the Court believes is appropriate and proper.

## <u>JURY DEMAND</u>

**Plaintiff respectfully demands a jury trial on all issues so triable.**

Dated:  October 21, 2020

Respectfully submitted,

Jonathon A. Moseley, Esq.
<u>Mailing Address</u>:
3823 Wagon Wheel Lane
Woodbridge, Virginia 22192
Meetings by Appointment Only
Telephone:  (703) 656-1230
Facsimile:  (703) 997-0937
Contact@JonMoseley.com