## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

JONATHON A. MOSELEY

                Plaintiff,

    v.

JUDGE RICHARD E. GARDINER

          and

ROBERT VAUGHN,

          and

SOLUTION PAINTING INC.

          Defendants.

Civil Action No.  1:20-cv-01248

### PLAINTIFF'S AMENDED MEMORANDUM OF LAW ON ILLEGALITY OF COLLECTING ASSESSED MONEY JUDGMENT BY CONTEMPT IN SATISFACTION OF COURT'S ORDER TO SHOW CAUSE

COMES NOW THE PLAINTIFF, Jonathon A. Moseley, *pro se*, and hereby respectfully files this Memorandum of Law demonstrating once again that money judgments cannot lawfully be collected by the use (abuse) of a court's contempt power.

Thus, the legal invalidity and barrier fully satisfies the requirement to show cause why the Court "should not" (that is, cannot) hold the Plaintiff Jonathon Moseley in contempt.

The District Court and appellate courts should note that there are extensive precedents and rules concerning a debt owed *TO THE GOVERNMENT* especially under circumstances in which the debtor agreed by contract or acceptance of a grant or acceptance of a government benefit in governing documents or pursuant to governing regulations to the

conditions of repayment.

This, however, is not that.

Eliminating the inapplicable precedents and rules, there is no authority that has been identified governing the payment to a private party of a debt enforced by contempt power (other than when explicitly provided for by statute such as child support).

## I.      WAIVER OF ORAL ARGUMENT

Due to the requirements of this District's General Order 2021-13 requiring vaccination against COVID-19, Jonathon Moseley is constrained to submit his response in writing, specifically this writing, and waive oral argument.   This is explained in Moseley's companion notice concerning his status under General Order 2021-13.

## II.     U.S. SUPREME COURT PREVENTS INFERRING IMPLIED POWERS WHERE EXPLICIT MEASURES ARE PROVIDED FOR.

Under the reasoning and analysis of the U.S. Supreme Court, this Court may not infer that a debt can be collected by the contempt power unless a statute explicitly states so – which it does not.

First the U.S. Supreme Court restated the "American Rule" for context:

> Although some American commentators have urged adoption of the English practice in this country,[10] our courts have generally resisted any movement in that direction. The rule here has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor. This Court first announced that rule in *Arcambel v. Wiseman*, 3 Dall. 306, 1 L.Ed. 613 (1796), and adhered to it in later decisions. See, e.g., *Hauenstein v. Lynham*, 100 U.S. 483, 25 L.Ed. 628 (1880); *Stewart v. Sonneborn*, 98 U.S. 187, 25 L.Ed. 116 (1879); *Oelrichs v. Spain*, 15 Wall. 211, 21 L.Ed. 43 (1872); *Day v. Woodworth*, 13 How. 363, 14 L.Ed. 181 (1852).
>
> In support of the American rule, it has been argued that since

litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel. *Cf. Farmer v. Arabian American Oil Co.*, 379 U.S. 227, at 235, 85 S.Ct. 411, at 416, 13 L.Ed.2d 248 (1964); id., at 236—239, 85 S.Ct. 417—418 (concurring opinion of Mr. Justice Goldberg). Also, the time, expense, and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney's fees would pose substantial burdens for judicial administration. *Oelrichs v. Spain*, supra, 15 Wall. at 231.

*Fleischmann Distilling Corporation v. Maier Brewing Co*, 386 U.S. 714,717-718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

However, most importantly, the U.S. Supreme Court then rejects the finding of an implied method of a remedy not explicitly stated. In the case at bar, the private Defendants find no authority or precedent for using the contempt power as a debt-collection technique, but want to find it implied by an over-broad reading of unrelated precedents:

> ***When a cause of action has been created by a statute which expressly provides the remedies for vindication of the cause, other remedies should not readily be implied.*** *Philp v. Nock*, 17 Wall. 460, 21 L.Ed. 679 (1873); *Teese v. Huntingdon*, 23 How. 2, 16 L.Ed. 479 (1860); cf. *Day v. Woodworth*, 13 How. 363, 14 L.Ed. 181 (1852). Congress has overturned the specific consequence of Philp and Teese by expressly allowing recovery of attorney's fees in patent cases [16] and has selectively provided a similar remedy in connection with various other statutory causes of action.[17] But several attempts to introduce such a provision into the Lanham Act have failed of enactment.18 We therefore must conclude that Congress intended § 35 of the Lanham Act to mark the boundaries of the power to award monetary relief in cases arising under the Act. ***A judicially created compensatory remedy in addition to the express statutory remedies is inappropriate in this context.***

*Fleischmann Distilling Corporation v. Maier Brewing Co*, 386 U.S. 714, 720-721, 87 S.Ct.

1404, 18 L.Ed.2d 475 (1967) *(emphases added).*  [1]

The U.S. Supreme Court held that federal benefits (there ERISA payments) are subject to ***State law*** garnishment (debt collection) laws and procedures.  *Mackey v. Lanier Collection Agency Service, Inc*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988).  That is, federal awards do not pre-empt State law collection procedures unless explicitly stated.  This tends to endorse the view that Virginia's state-law debt collection procedures govern the private Defendant's claim for payment.  The federal nature of this claim does not pre-empt Virginia state law for collection purposes.  (*Mackey found one Georgia state law that was explicitly focused on certain ERISA situations and therefore was pre-empted, but rejected pre-emption as to all other State law garnishments.*)

Contrast this with a substantive, non-money judgment order:

> B. Five days after we issued our opinion, Spindelfabrik informed the district court that Schubert was "once again actively engaged in marketing [infringing machines] in the United States." Schubert responded that two new modifications made this particular machine noninfringing. After an evidentiary hearing, the district court held that the new machine also infringed claim 18 of the '946 patent. The court held Schubert to be in civil contempt of the injunction and stated that it would "make an appropriate and meaningful award to plaintiffs of damages and attorneys' fees to compensate plaintiffs for the infringement and for being required to deal with defendants' defiant conduct since entry of the original injunction in this action."...

*Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 865 F.2d 268, 9 USPQ2d 1743 (Fed. Cir. 1988)

## III.    A MONEY JUDGMENT IS NOT AN ORDER SUBJECT TO CONTEMPT

---

[1]    Research tools show negative treatment, but what Moseley can find only makes the point stronger.  The flag to negative treatment of the precedent actually shows that Congress responded by enacting an amendment to the Lanham Act, thus endorsing the Court's interpretation that statutory authority for attorneys' fees was required and the courts could not merely infer an implied remedy.

In neither the Fourth Circuit of the Federal Courts nor in Virginia courts is a final order of a money judgment the type of order that can be collected by contempt.

Well, what is a "judgment?"  Federal Rules of Civil Procedure Rule 54 makes clear:

> **Rule 54. Judgment; Costs**
>
> **(a) DEFINITION; FORM. "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment should not include recitals of pleadings, a master's report, or a record of prior proceedings.**
> * * *

Therefore, this Court's order of August 16, 2021, is an ordinary and unremarkable money judgment indistinguishable from any other.

***No special or unusual treatment is allowed or justified under Federal law or Virginia law.***

No one has offered any authority or precedent that Plaintiff Moseley is aware of to distinguish this Court's August 16, 2021, Order from any other money judgment emtered routinely by any other Court.

However, there is authority commanding otherwise, under the definition of Rule 54(a) of the Federal Rules of Civil Procedure.  Against the clear command that any amount due from which an appeal lies, neither the Defendants nor the Court have offered any authority to treat this Court's August 16, 2021, order any differently from any other debt resulting from a court decision or order.

**Thus any order for the payment of money or creating any financial obligation is a "judgment" in the Federal courts if it is capable of being appealed.**

Here, the private Defendants are seeking to collect on a money judgment entered on

August 16, 2021.  Because that order is capable of being appealed (and in fact was appealed, even if Moseley's primary obligations to (a) clients other than himself and (b) attempts to earn money to pay all of his debts rather than to fight about them limited the ability to pursue that appeal, nevertheless an appeal was in fact noted), the money at issue in this case is a money "judgment."

Under Rule 54 (a), the money at issue here qualifies as a "judgment."

Both Virginia law and the Federal Courts of Civil Procedure explicitly provide methods for collecting on judgments, which pre-empt, replace, and repeal any implied or imagined use of contempt.

Against this undeniable reality, many keep repeating in vain generalized but inapplicable platitudes about court orders in the abstract.

This is unavailing because all debts resulting from litigation are court orders.

However, no attempt has been made to assert any example or precedent or rule applying the generalized treatment of court orders to money judgments.

On the contrary, the Commonwealth of Virginia has explicitly and painstakingly occupied the field and terminated any common law methods for collecting on money judgments.  The number of statutes passed by the General Assembly of Virginia on this topic is very impressive, creating an inter-locking and comprehensive carpet of regulation.  No aspect of the debt-collection universe is left unoccupied by Virginia's statutes.

Moreover, this point has been pressed extensively and yet no one has ever come back finding any response or contrary authority that reality:

The General Assembly has thoroughly occupied the field of debt-collection, thereby extinguishing any flickering ember of the pre-existing common law.

Debt collection is now exclusively a creature of statute in the forum Virginia.

Not only that, but the General Assembly has painstakingly and explicitly abolished all common law writs, by name, on this topic.

And yet no precedent "on point" has ever been offered or provided from the Federal courts or the forum Virginia courts.

Discussions about orders in general are inapposite and inapplicable.

As Moseley pointed out in a hearing before the Magistrate, if an obligation contained no due date, it would be no obligation at all because it would never become due and payable.

Thus specifying a due date under contract law and the law of judgments does not somehow magically transform an ordinary money judgment into some other kind of order.

A debt with a due date attached does not get treated any differently, especially because a due date is essential to collecting a debt, which otherwise ***would never be "due and payable"*** without an assigned date.

Thus simply because a date is identified does not provide authority to treat a debt differently, except in the sense that no one could ever collect a debt without a due date.

Somehow, attorneys who have forgotten Contracts from law school have badly confused the existence of a due date for payment of a debt as somehow an order to which contempt could somehow attach.

If there were no due date on an obligation to pay a money judgment, the debt would remain uncollectible for hundreds of years because it would never become due.  Not only would it remain unpaid, but execution on the judgment could not be undertaken because the sum would not yet be due and payable.

Attaching a date to a money judgment does not magically transform it into an order

enforceable by contempt.  No such precedent has ever been advanced despite this intransigent dispute.

### IV.     THIS COURT HAS LOST JURISDICTION OF THE MONEY JUDGMENT

The Court entered an Order establishing an ordinary money judgment on August 16, 2021, erroneously awarding payment of attorneys fees to private parties.

The fact that the amount is due to private parties makes clear that it is an ordinary money judgment.

There is a temptation to a severe error, by failing to recognize that the debt is not payable to the Court or to any government agency.

Pursuant to Federal Rules of Civil Procedure Rule 59(e) and Rule 58(e), this Court lost jurisdiction of the money judgment 28 days after August 16, 2021.

An award of attorneys fees ("costs as between solicitor and client") are a final judgment:

> Such are the considerations which underlay the decision in *Trustees v. Greenough*, 105 U.S. 527, 531, 26 L.Ed. 1157, in holding that an order allowing costs 'as between solicitor and client' was a final judgment for purposes of appeal because 'the inquiry was a collateral one, having a distinct and independent character.'...

*Sprage v. Ticonic Nat Bank*, 307 U.S. 161, 168-169, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).

That is the order of the Court became a final order on September 7, 2021, and the Court lost jurisdiction to alter the money judgment any further.

This is clear because the order that money is due is an ordinary judgment of money in compensation and is not a general order.  *Id.*

Somehow it seems to escape attention that all results of a court case that result in an order to pay some amount of money ***are all court orders***.

Merely repeating in excited tones that this is a court order fails to confront the reality that ___*all*___ financial obligations arising from any kind of court cases **are** ___*all*___ **court orders.**

Clearly, every time there is a jury award, the collection of the award is not subject to the contempt power – nor would any judge looking at the stack of work already on his or her desk want it to become so.

Thus, the entry of a money judgment on August 16, 2021, deprived this Court of further involvement in the collection of a private debt owed to a private party on September 7, 2021.

## V.   JURISDICTION OF A COURT MAY BE RAISED AT ANY TIME

> Objections to subject-matter jurisdiction, however, may be raised at any time. Thus, a party, after losing at trial, may move to dismiss the case because the trial court lacked subject-matter jurisdiction. *Arbaugh*, 546 U.S., at 508, 126 S.Ct. 1235. Indeed, a party may raise such an objection even if the party had previously acknowledged the trial court's jurisdiction. *Ibid.*

*Henderson v. Shinseki*, 131 S.Ct. 1197, 179 L.Ed.2d 159, 562 U.S. 428, 434-435 (2011)

Here, the District Court lost jurisdiction over the final order on September 7, 2021.

The Defendants have resort to the State law and Federal debt collection methods, but may not further pester this Court, which is done with the case.

## VI.   VIOLATING FRCP RULE 11 TO NEEDLESSLY INCREASE THE COST OF LITIGATION, HARASS, ETC.

Here, of course, the private Defendants could long ago have resorted to Virginia's comprehensive but not-all-that difficult debt collection methods.

1)      FRCP Rule 11 requires of the private party Defendants *(emphasis added):*

* * *

(b) REPRESENTATIONS TO THE COURT.

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) *it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;*

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

The private Defendants chose to consume this Court's time with their unwillingness to make use of the debt collection procedures made available to them by the Congress and the Virginia General Assembly.

They are not interested in the money.

They are interested in establishing a nasty and vicious new approach not just for this debt but for all others, in order to change the law outside of going to Richmond and asking for an amendment in the General Assembly.

With millions of U.S. citizens behind in their rent and facing evictions, much less overdue on utilities, car payments, credit cards and other bills due to a pandemic from a virus concerning which they share no blame and have no fault, it has never been more urgent to thoroughly reject the un-American and Dickensian offense of collecting debts other than

through the carefully-balanced approach painstakingly established by the legislatures.

However, this procedure is a violation of FRCP Rule 11 where the private Defendants flagrantly refuse to use standard debt collection procedures, but instead seek to harass the Plaintiff as well as the Court and disrupt the Court's busy schedule.

## VII.   ABUSE OF THE CONTEMPT POWER TO COLLECT A MONEY JUDGMENT

The issue on the table is, quite obviously, whether the private Defendants demand that the contempt power be abused is correct.

Responding that the contempt power exists is unacceptably illogical.

The question is not existence, but proper use.

Arguing the existence of a contempt power by courts is not relevant.  The question is whether the power can be used in this way in this circumstance.

## VIII.   VIOLATION OF THE DEBT COLLECTION PRACTICES ESTABLISHED BY STATE AND FEDERAL LAW

Not only are the debt-collection laws established by the legislatures the only legally-allowable methods, but they are carefully crafted to balance the availability of funds and payment over time in a realistic manner against creditors eventually getting paid, including with interest.

It is not only illegal but an immoral offense to sidestep the carefully-crafted balance established to provide for the eventual payment of debts at a reasonable, practical, and feasible pace.

To achieve this balance, Congress has established severe penalties for actions that violate the Fair Debt Collections Practices Act.  Congress, like the Virginia General

Assembly, has labored to prevent disruption to debtors while they are trying to focus on earning a living to be able to pay back their debts.

Here, the vicious impatience of at least one of the Defendants is the only reason that all debts have not already been paid.  If allowed to focus on doing the things needed for a professional to earn at full capacity, including marketing, establishing consistency, etc., Moseley would already be debt free by now and would have paid this and other debts off.

This self-defeating pure meanness is what the legislatures sought to avoid.

Creating maximum chaos and disruption is exactly what the legislatures tried to stop.

Against that, the legislatures provided the compensation of post-judgment interest automatically provided by statute, clear and easy methods for obtaining inquiry about assets and the ability to pay, and very powerful tools to obtain payment at a do-able pace.

In doing so, the State legislature and FRCP abolishes the use of contempt in favor of the carefully balanced system for collecting debts.

Yet, curiously, the private Defendants here are adamant and viciously eager to destroy what the legislatures of Virginia and the Federal Government sought to establish.

The debt collection methods available allow creditors to obtain a suitable portion of the money available, so that both the goals of debtors being able to live and the debt to get paid off over time are both accommodated.

The viciousness of this and other attorneys here, however, is to fantasize about money that does not exist and attempt to compel payment of money without regard to whether it can be paid or not.  They want to order payment whether a debtor can or cannot actually pay.

This attempt here is a direct and outrageous violation of the legislative purpose

because what is on the table is to strip from the process the very quality that the State and Federal legislatures painstakingly tried to establish:  Payment as a debtor has the ability to pay, while still being able to live and cover other expenses and debts, no faster or slower.

The very dagger placed before the Court by these Defendants is intended to rip that essential safeguard from the debt collection regime established by statute.

This attorney, seeing millions of Americans on the edge of homelessness living under a bridge or having their utilities shut off, believes that a resounding no to that invitation is worth the fight.  (Unfortunately, however, like most other Americans emerging from a recession and pandemic, there are too many urgent priorities to focus on this alone.)

## IX.  FEDERAL LAWS AND REGULATIONS GOVERN (PRE-EMPT) THE COLLECTION OF DEBTS

Federal Rule of Civil Procedure Rule 69 leaves the question closed:  First, Virginia State law governs the collection of a debt created by a Federal court's order:

**Rule 69. Execution**

(a)  IN GENERAL.

(1) *Money Judgment; Applicable Procedure.* A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

(2) *Obtaining Discovery.* In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

(b)  AGAINST CERTAIN PUBLIC OFFICERS. When a judgment has been entered against a revenue officer in the

> circumstances stated in 28 U.S.C. §2006, or against an
> officer of Congress in the circumstances stated in 2 U.S.C.
> §118, the judgment must be satisfied as those statutes
> provide.

Similarly, The Debt Collection Improvement Act of 1996 (DCIA), 31 U.S.C. § 3701 et seq expanded the government's right to use collection tools such as private collection agencies and offset of government payments to collect debts created under Federal authority.

## X.     GOVERNING VIRGINIA PROCEDURES THAT MUST BE FOLLOWED

1.      The General Assembly of Virginia has stripped Virginia courts of any power to use contempt of court or especially imprisonment to collect or enforce a debt.

2.      As noted, the Federal court must follow the debt collection laws of the forum State, unless there is an explicit Federal statute pre-empting them.

3.      Va. Code §§ 8.01-467 and 8.01-474 authorize the issuance of a writ of *fieri facias* for the purpose of the collection of a court-ordered debt.

4.      However, other writs relating to the collection of a debt are explicitly abolished in Virginia by legislation.

5.      Collectively the writs abolished demonstrate that the contempt power of a Virginia court cannot be used to enforce payment of a money judgment or court-ordered debt.

6.      For example, common law writs for imprisonment or detention of a debtor and many other types of orders against a debtor have all been abolished in Virginia.

7.      Collectively, these prohibitions abrogate use of the contempt power for collection of a money judgment debt.

8.      Va. Code § 8.01-467 explicitly prohibits the use of contempt power to enforce

a debt, even one determined by a court order:

> **§ 8.01-467. What writs may not issue.**
>
> No writ of levari facias, writ of extendi facias, writ of elegit,
> writ of capias ad satisfaciendum, or writ of distringas shall be
> issued hereafter

9.      A writ now **_PROHIBITED_**  by Virginia Statute in Va. Code § 8.01-467 of a

**writ of _extendi facias_ is** defined in Black's Law Dictionary Free Online Dictionary at

www.thelawdictionary.org  as *(emphasis added):*

> A writ of execution issuable in England against a debtor to
> the crown, **which commands the sheriff to "take" or
> arrest the body,** and "cause to be extended" the lands and
> goods of the debtor. Man. Exch. Pr. 5.

10.      Thus, the primary effect of a contempt of court is explicitly forbidden as an

action for the collection of a debt.

11.      Virginia courts are **_FORBIDDEN_** by statute from incarceration of any debtor

in furtherance of collecting an ordinary debt.

12.      A writ now **_PROHIBITED_**  by Virginia Statute in Va. Code § 8.01-467 of **a**

**_writ_ of _levari facias_** is defined in Black's Law Dictionary Free Online Dictionary at

www.thelawdictionary.org  as

> Lat. A writ of execution directing the sheriff to cause to be
> made of the lands and chattels of the judgment debtor the sum
> recovered by the judgment. Pentland v. Kelly, 6 Watts & S.
> (Pa.) 4S4. Also a writ to the bishop of the diocese,
> commanding him to enter into the benefice of a judgment
> debtor, and take and sequester the same into his possession,
> and hold the same until he shall have levied the amount of the
> judgment out of the rents, tithes, and profits thereof.

13.      A writ now **_PROHIBITED_**  by Virginia Statute in Va. Code § 8.01-467 of a

**writ of _elegit_** is defined in Black's Law Dictionary Free Online Dictionary at

www.thelawdictionary.org  as

> (Lat. lie has chosen.) This is the name, in English practice, of a writ of execution first given by the statute of Westm. 2 (13 Edw. I. c. IS) either upon a judgment for a debt or damages or upon the forfeiture of a recognizance taken in the king's court. It is so called because it is in the choice or election of the plaintiff whether he will sue out this writ or a /fi,. fa. By it the defendant's goods and chattels are appraised and all of them (except oxen and beasts of the plow) are delivered to the plaintiff, at such reasonable appraisement and price, in part satisfaction of his debt. If the goods are not sufficient, then the moiety of his freehold lands, which be had at the time of the judgment given, are also to be delivered to the plaintiff, to hold till out of the rents and profits thereof the debt be levied, or till the defendant's interest be expired.  During this period the plaintiff is called "tenant by elegit." and his estate, an "estate by elegit." This writ, or its analogue, is in use in some of the United States, as Virginia and Kentucky. See 3 Bl. Comm. 418; Ilutcheson v. Grubbs, 80 Va. 254; North American F.Ins. Co. v. Graham, 5 Sandf. (N. Y.) 197.

14.     A writ now ***PROHIBITED***  by Virginia Statute in Va. Code § 8.01-467 of **a writ of capias ad satisfaciendum** is defined in Black's Law Dictionary Free Online Dictionary at www.thelawdictionary.org as

> A writ of execution, (usually termed, for brevity, a "ca. sa.,") which a party may issue after having recovered judgment against another in certain actions at law. It commands the sheriff to take the party named, and keep him safely, so that he may have his body before the court on a certain day. to satisfy the party by whom it is issued, the damages or debt and damages recovered by the judgment. Its effect is to deprive the party taken of his liberty until he makes the satisfaction awarded. 3 Bl. Comm. 414, 415; 2 Tidd. Pr. 993. 1025; Litt.

15.     A writ now ***PROHIBITED***  by Virginia Statute in Va. Code § 8.01-467 of a **writ of distringas** **is** defined in Black's Law Dictionary Free Online Dictionary at www.thelawdictionary.org as

> In English practice. A writ directed to the sheriff of the county in which a defendant resides, or has any goods or chattels, commanding him to distrain upon the goods and chattels of the defendant for forty shillings, in order to compel his appearance. 3 Steph. Comm. 567. This writ issues in cases where it is found impracticable to get at the defendant personally, so as to serve a summons upon him. Id.  A distringas is also used in equity, as the first process to compel the appearance of a corporation aggregate. St. 11 Geo. IV. ar.d 1 Wm. IV. c. 36.A form of execution in the actions of detinue and assise of nuisance. Brooke, Abr. pi.26; Barnet v. Ihrie, 1 Rawle (Pa.) 44.

16.     Therefore, the General Assembly has clearly manifested its intent to authorize the use of the writ of *fieri facias* **_as the sole mechanism in the Commonwealth for the collection of a debt_**, while painstakingly prohibiting (and somewhat repetitively so) all other methods for collecting on a debt, while explicitly repealing all other writs for collection of a debt.

17.     Similarly, in addition, the General Assembly of Virginia has abrogated the common law with regard to the collection of any debt by enacting statutes that precisely define the methods for collecting on a debt and the circumstances and limitations under which some portion of a debt may be collected, including limitations on the rate at which a reasonable amount of a debt may be collected at a reasonable rate, such as in garnishment of wages no more than 25% of the amount of wages in excess of minimum wage.

18.     The General Assembly has enacted an extensive network of statutes and provisions in Va. Code §§ 8.01-466  through  8.01-525, and elsewhere in the statutes of Virginia.

19.     By this network of statutes, the General Assembly has manifested its intent to provide a comprehensive and balanced network of statutes and procedures to comprehensively occupy the field concerning the collection of debts.

20.     Even non-judicial actions like foreclosures are explicitly regulated by statute,

including Va. Code §§ 55.1-320 through 55.1-345.

21.     See also Va. Code § 16.1-100 (Additional executions) and Va. Code § 16.1-98 through Va. Code § 16.1-105.

22.     Other mechanisms such as a confessed judgment are precisely regulated by statute in Virginia, such as in Va. Code §§ 8.01-431 through 8.01-441.

23.     Therefore, the comprehensive regulation of the collection of debts demonstrates the General Assembly's intent and attempt to completely replace the common law and any other unrelated statute and occupy the field with its structure for the collection of debts and occupy the field by its own statutory scheme.

24.     The following presents the rule as a double-negative, but the principle must be unpacked to its affirmative meaning:

> "When an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to the rule." Boyd v. Commonwealth , 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988). Statutes are to be read "in conjunction with the common law, giving effect to both unless it clearly appears from express language or by necessary implication that the purpose of [a statute] was to change the common law." Jenkins v. Mehra , 281 Va. 37, 44, 704 S.E.2d 577, 581 (2011) (citations and internal quotation marks omitted).

25.     Here, the legislation by the General Assembly as a comprehensive network of statutes dealing with the collection of a debt ordered as a money judgment by a court **_DO_** "encompass the entire subject covered by the common law."

26.     One may ask the question the other way around:  In reviewing all of the statutes enacted by the General Assembly, is there any aspect of the collection of a debt _NOT_ addressed by the General Assembly's statutory scheme?  Nothing appears to be missing.

27.     Therefore, the General Assembly has occupied the field and therefore

abrogated the common law including the use of contempt for the collection of a debt.

28.     In the original case, the Defendants here argued that the contempt power could be used pursuant to <u>Alexander v. Alexander</u>, 406 S.E.2d 666, 12 Va.App. 691 (Va. App. 1991).  However, that case was "This domestic relations appeal concerns an award of child support."  Therefore, <u>Alexander v. Alexander</u> is irrelevant, where there is an explicit exception established for domestic relations cases.

29.     In the original case, the Defendants here argued that the contempt power could be used pursuant to <u>Fisher v. Salute</u>, 657 S.E.2d 169, 51 Va. App. 293 (Va. App. 2008), citing to the passage:

> It is axiomatic that a court may find a party in contempt for "disobedience or resistance . . . to any lawful process, judgment, decree or order of the court." Code 18.2-456(5); see also <u>Higginbotham v. Commonwealth</u>, 206 Va. 291, 294, 142 S.E.2d 746, 749 (1965) ("It has long been recognized and established that a court is invested with power to punish for contempt, both by the inherent nature and constitution of the court and by [statute]." (internal citations omitted)). "The power to punish for contempt is inherent in, and as ancient as, courts themselves. It is essential to the proper administration of the law, to enable courts to enforce their orders, judgments and decrees." <u>Carter v. Commonwealth</u>, 2 Va.App. 392, 395, 345 S.E.2d 5, 7 (1986).

30.     However, "the proper administration of the law" speaks to the conduct of a pending case, not to the post-judgment collection of a debt.

31.     A court has no further role in administration or conduct of a case for payment of a debt after the case is over.

32.     Therefore, whether, when, or how a money judgment is paid cannot in any way affect the administration of a court.

33.     By contrast, in <u>Fisher v. Salute</u>, the Court ordered the removal of a boat dock deemed to be dangerous such that "the son of Paul C. Salute was electrocuted and drowned in lake waters near a boat dock owned by Fisher. It was alleged that Fisher had improperly

installed, maintained, and operated an electrical system on his boat dock and that, as a result of this negligence, the boy was killed."

34.     In Fisher v. Salute, the Court explicitly held the case open and not final for the express purpose of supervising the removal of the dangerous dock.

35.     Clearly, removal of a dangerous dock was an action which could not be substituted with the payment of money and was not embraced within the statutory scheme provided by the General Assembly for the collection of the debt.

36.     The *Fisher v. Salute* case relies upon Higginbotham v. Com., 206 Va. 291, 142 S.E.2d 746 (1965) in which an attorney committed contempt in open court during the jury trial by exhibiting evidence to the jury in violation of an order not to do so.  The attorney was fined $250 in 1965.  The case had no relevance to the question here about how the $250 may be collected.

37.     Similarly, the *Fisher v. Salute* case also relies upon Carter v. Commonwealth, 96 Va. 791, 45 L.R.A. 310, 32 S.E. 780 (1899) , which again offers no relevance here. Carter involved a plaintiff who asked for a continuance by sending telegrams allegedly lying about being sick with typhoid fever.   The contempt had nothing to do with any post-judgment compliance or payment of a debt.

38.     Furthermore, where statutes of specific, narrow application directly speak to a topic, those statutes control over statutes or precedents of general reach:

> We must apply Code § 15.1-549 in this case because it is a statute of specific application which takes precedence over Code § 8.01-382, a statute of general application.

> "'[W]hen one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, ... where they conflict, the latter prevails.' " Dodson v. Potomac Mack Sales & Service, 241 Va. 89, 94-95, 400 S.E.2d 178, 181 (1991)

(quoting <u>Virginia Nat'l Bank v. Harris</u>, 220 Va. 336, 340, 257 S.E.2d
867, 870 (1979)); <u>City of Winchester v. American Woodmark</u>, 250
Va. 451, 460, 464 S.E.2d 148, 153 (1995).

<u>County of Fairfax v. Century Concrete Services, Inc.</u>, 254 Va. 423, 492 S.E.2d 648 (1997).

39.     Thus the specific statutes directly governing how debts are collected must

prevail over and supersede general statutes or common law about orders concerning the

administration of courts or trials.

40.     A Virginia Court must defer to and comply with the statutes named above that

precisely define the mechanisms for collection of a debt.


## XI.   THE COURT SHOULD NOT USE THE UNAUTHORIZED CONTEMPT POWER TO ABROGATE THE DEBT COLLECTION PROCEDURES PROVIDED BY THE VIRGINIA GENERAL ASSEMBLY

Aside from the legal obstacles, the Court is considering whether or not a private civil

debtor *should* be held in contempt for a money judgment.

Thus, the Court is called upon to consider all of these factors in order to determine

what is a proper resolution of Robert Vaughn's utter refusal to use the ordinary debt

collection methods the law establishes, or to try to collect from the client Blanca Mijares

whom he claims is responsible for lying about his client Solution Painting, Inc.

The Court cannot say that the Plaintiff ignored the contours of the Rooker-Feldman

and Younger doctrines, when the Plaintiff explicitly addressed why those doctrines *do not*

*apply* to this case.  Moseley was extremely clear in the Complaint that the doctrines do not

apply.

Therefore, because the Plaintiff explicitly explained why those doctrines do not

apply, the Court cannot reasonably determine that no reasonable attorney could have

believed that the Complaint was – and still is – warranted under the facts and the law.

The Complaint was extremely clear that the Defendants acted under color of state law by Robert Vaughn, as an officer of the court, using governmental power to coerce payment of a money judgment that Moseley was unable to pay.

To determine whether sanctions under Rule 11 should be imposed, the court employs an objective test of reasonableness, asking whether "a reasonable attorney in like circumstances would believe his actions to be factually and legally justified." *Artco Corp. v. Lynnhaven Dry Storage Marina, Inc.*, 898 F.2d 953, 956 (4th Cir. 1990). This test does not require counsel to be correct in their legal argument; instead, counsel need only be reasonable. *Miltier v. Downes*, 935 F.2d 660, 664 (4th Cir. 1991). Rule 11(b)(3) states that a party's factual contentions must "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." See *Morris v. Wachovia Sec., Inc*., 448 F.3d 268, 277 (4th Cir. 2006) ("[F]actual allegations violate Rule 11(b)(3) when they are "unsupported by any information obtained prior to filing.").

Once again, the Supreme Court of Virginia has already agreed with the Plaintiff in *Wright v. Matthews*, 209 Va. 246, 163 S.E.2d 158 (1968). There is no dispute under state law with the Plaintiff. The question is whether the Plaintiff has a right under the U.S. Constitution not to face a debtor's prison for the inability to pay a civil debt <u>unrelated</u> to any criminal conviction.

Therefore, faced with the question of <u>should</u> this Court find a private civil debtor in contempt, assuming that the Court is legally authorized to do so, the circumstances demonstrate that the answer is no.

In the Federal courts it is made explicitly clear that the mere fact that a motion is denied or a complaint dismissed is never sufficient for the award of sanctions.  Frankly, most defense attorneys should not waste their time in the modern popular exercise of tossing motion for sanctions around like confetti.  They hope to sneak one through past an inattentive judge in their view.

Rule 11 motions for sanctions under the Federal Rules of Civil Procedure are exclusively and strictly limited to a situation where no reasonable attorney (or party *pro se*) could have thought that the motion or complaint was meritorious.

Here, the Plaintiff explicitly and laboriously proclaimed that he was not asking for the Eastern District to review, reverse, or interfere with the progress or decisions of the case in the Fairfax County Circuit Court.


## XII.   BACKGROUND

The Supreme Court of Virginia and the Virginia General Assembly have made it clear that a debt ***may not*** be collected by the contempt power of a court (except in limited situations when explicitly provided for such as child support where Virginia considers the state to be a third party due to the welfare of a child who would otherwise be a ward of the State).  See:  *Wright v. Matthews*, 209 Va. 246, 163 S.E.2d 158 (1968).

The Plaintiff was explicit in looking forward to a ruling that jailing a debtor – any debtor from any case – in the Commonwealth of Virginia is a violation of the debtor's constitutional and civil rights, including as admitted by the Supreme Court of Virginia pursuant to the Thirteenth Amendment in *Wright v. Matthews*, 209 Va. 246, 163 S.E.2d 158 (1968).

Indeed, the Complaint explicitly sought certification of a class, making even more clear that the case is not only about him or the case in the state court.

The civil rights laws pled clearly apply to a private party acting under color of state law, and therefore clearly apply to the private Defendants invoking the authority of the Court.   Thus, the lawsuit is undeniably meritorious.

Given that the Plaintiff categorically and explicitly rejected any suggestion that he was asking for this Court of the Eastern District to review, consider an appeal, or interfere with the Fairfax County Circuit Court case prevents any possibility that no reasonable attorney could have thought that the motion was meritorious.  Quite the opposite.

Yet, after opposing the declaratory judgment lawsuit by Jonathon Moseley seeking to declare that attorneys fees may not be collected by judicial contempt, claiming that Moseley's attempt to receive a ruling on a disputed area of the law, the private Defendants led by attorney Robert Vaughn now repeat their behavior here before this Court and before the appellate courts above.

Having argued that Moseley's lawsuit should not be allowed to clarify the law in this area – in spite of the private Defendants undeniably acting under color of State law and thus being proper parties of the lawsuit – Robert Vaughn doubles down and illustrates and demonstrates now what he was guilty of in the Virginia Court, repeated here again.

Nevertheless, the private Defendants' smear machine necessitates clearly presenting the issues now before this Court:  In the Circuit Court of Fairfax County, Virginia, as is on the record in that court's files, Blanca Mijares sued her former employer Solution Painting, Inc., *pro se*, before having met the Plaintiff Jonathon Moseley, alleging on the record that she had been sexually groped physically and otherwise sexually harassed on the job as the

bookkeeper of Solution Painting, Inc. and alleging that Solution Painting, Inc. had required

her to maintain false and inaccurate financial records as bookkeeper by providing incomplete

information to her for each month of operations.  Mijares advised Solution Painting, Inc. that

she needed all of the records of income and expenses to keep accurate books and pointed out

that the inaccurate records could result in fraudulent tax filings to the Federal government

and the Commonwealth of Virginia and possibly even to Fairfax County with regard to the

BPOL tax.  Mijares also found that a key employee had prepared false checks from the

company to show to Fairfax County government with regard to personal benefits.  When

Mijares brought this to the manager's attention, Blanca Mijares was fired.  Mijares sued *pro

se* for wrongful termination and the physical assault.

When running into a motion to dismiss on whether wrongful termination applied to

her allegations, Mijares asked the Plaintiff Jonathon Moseley to assist her.  Moseley

succeeded in explaining to the Circuit Court the law on wrongful termination.

Attorney Robert Vaughn then noticed an untimely deposition on the eve of trial

outside of the schedule allowed in Fairfax County, and hopeful for a settlement, Moseley and

Mijares did not object to the untimely deposition.  Robert Vaughn simultaneously wanted to

rush to trial and refused a postponement.

Robert Vaughn then spent about 6 hours yelling at Mijares, pounding the conference

room table, standing up and accusing her from a standing position, asking her the same

questions over and over, and accusing Mijares of being a liar.

Accustomed to acting *pro se*, Blanca Mijares had prepared some answers to

interrogatories – very incomplete and badly formatted.  But instead of sending the answers to

interrogatories to her then attorney, Moseley, for further work, she sent them (having

previously been *pro se*) directly to attorney Robert Vaughn.  Vaughn objected that he could

not accept her answers directly because she had counsel.  Moseley replied noting that at that

time the deposition was the following day and as imperfect as they were he would need to

review them in order to conduct a meaningful deposition.

Because attorneys are never witnesses – and cannot be witnesses – to the events prior

to the attorney's involvement, a party's answers to interrogatories are the answers of the

party alone.

Moseley specifically and explicitly pointed out the answers to Interrogatory # 4 –

concerning any previous litigation Mijares was involved in -- as being inadequate and telling

Robert Vaughn that Vaughn would want more information about prior litigation.

However, instead of asking about the topic thus highlighted by Moseley, Robert

Vaughn consumed the 6 hours with insults and yelling at Mijares and never asked her

anything in the deposition about the topic.

Thereupon, the evening before the trial, Vaughn called Moseley with a fanciful tale of

how the lawsuit belonged to the bankruptcy Trustee because Mijares had filed for Chapter 13

bankruptcy.  Moseley pointed out that the bankruptcy petition had been dismissed without

action because Mijares missed one or more hearings, one due to a snowstorm in the D.C.

area.  The next morning – in violation of Fairfax County's rules for motions requiring two

weeks' notice for dispositive motions – Vaughn sprung an entirely different motion on the

Court, which neither Moseley nor Mijares had known anything about.  With a jury panel

waiting in the hallway, Vaughn argued his motion to the judge Richard Gardiner despite the

violation of the motion scheduling rules of the Circuit Court.

Judge Gardiner refused to continue the motion to dismiss based on judicial estoppel

concerning the bankruptcy to allow it to be properly briefed and argued.  Judge Gardiner dismissed the case on the 13th hour motion without proper briefing.

Thereupon, Robert Vaughn filed a motion for sanctions which consisted exclusively of calling Moseley's client Blanca Mijares a liar and bringing a lawsuit which Vaughn argued was *factually* untrue – even though no facts were presented or decided and a jury had been waiting in the hallway to hear the facts, but never got the chance.

Judge Gardiner granted the award of sanctions based upon Blanca Mijares having lied in her lawsuit, which was the only motion that was before the Court.  The Circuit Court had not been presented with any other reason for the sanctions, and did not identify any other basis.  Although Judge Gardiner raised other topics, there is no statute that would allow for the imposition of sanctions on those grounds.

Judge Gardiner's order was written in the passive voice such that no one in particular was ordered to actually pay any sanctions.  Although the substance of the motion and the order was clearly about Blanca Mijares' truthfulness – necessarily speculative since no facts were presented or decided -- Judge Gardiner's order did not identify who would pay the sanctions, and being in the passive voice, if anyone would pay the sanctions.

Rather than employing the debt-collection methods provided in Virginia, attorney Robert Vaughn began his sadistic campaign of trying to extract the improper attorneys' fees only from Moseley and never took debtor's interrogatories of Blanca Mijares, in spite of basing his motion for sanctions on her being a liar, as he yelled at her for 6 hours before a court reporter.

Moseley filed this lawsuit for declaratory judgment.  The Plaintiff explicitly sued, with exquisite clarity, to obtain a declaration that – in the future – the Courts of Virginia do

27

not have the authority to imprison debtors, that is to use the contempt power to collect debts.

In seeking a construction of the U.S. Constitution, under 42 U.S.C. 1983 and *Bivens*, it will hardly be an eye-opening revelation that a case seeking a declaration of constitutional rights is frequently brought against nominal defendants.  [2]

Neither the private Defendants nor Judge Gardiner have any actual interest in imprisoning people based on non-payment of a civil debt with no connection to any criminal conviction, at least no legitimate interest.  While the Plaintiff has a legitimate interest in a declaratory judgment of his rights to liberty under the U.S. Constitution, none of the Defendants have any *legitimate* interest in being able to throw people in jail for non-payment of a civil debt.  The Defendants have nothing at stake that they are in danger of losing.  The possible mirage and illusion that threatening people illegally with jail might get debts paid is of course highly suspect and based on the unsupported assumption that debtors are sitting on a stash of cash under their kitchen sink, which is almost never true.[3]

But this Court completely ignored the unmistakable tremendous clarity that this lawsuit was not about the case that occurred in the Fairfax County Circuit Court except to demonstrate that the Plaintiff's genuine fear and reasons for concern gave him standing to

---

[2]     Plaintiff requested a Writ of Prohibition from the Supreme Court of Virginia, but Judge Gardiner, by counsel, opposed the Writ on the procedural grounds that a Prohibition is an extraordinary remedy.  That is, Gardiner's Motion argued that regardless of whether or not Moseley was correct on the substance, the procedure of Prohibition should not be used. In denying the Petition, the Virginia Supreme Court made the inexplicable comment that courts have the power of contempt – which had absolutely nothing to do with the question at issue – whether the contempt power was being abused, as defined and constrained by prior precedents and legislative enactments.  Thus on its face, the Petition did not provide a decision on the merits of the question actually at issue.

[3]     Plaintiff has spent years, scattered over 24 years, doing debt collection work and has found that people who persistently do not pay generally cannot pay, at least in the vast, vast majority of cases, and finds the tactics used here to be both offensive to the Plaintiff as a general matter and likely a violation of the Fair Debt Collection Practices Act.

obtain a declaratory judgment.

Ignoring the explicitly-clear allegations and clarifications of the Complaint, the Court erroneously dismissed under the Rooker-Feldman and Younger doctrines which have no application or relevance whatsoever to this case.  This Court also ignored the law that private parties acting under color of state law are subject to 42 U.S.C. 1983 and related statutes.

Other than satisfying the Court that Plaintiff's fear of losing his constitutional rights has some basis in reality, and is not imaginary or illusory, Plaintiff's claim for declaration of his constitutional rights ***would be just the same IF THE STATE COURT CASE HAD NEVER EXISTED***.   This case is not dependent upon anything that happened in the Fairfax County Circuit Court.

Sadly, debt collection companies routinely threaten debtors with jail.  The Plaintiff's claim in this case would still remain just as valid on that basis alone.  Thus, this case is not an appeal from the state court nor is it limited to anything about the state court case.  [4]

## XIII.   CONCLUSION

The Court must by law and by the circumstances of the Complaint deny the Defendants' refusal to employ the debt collection methods provided by the Virginia General Assembly and to invent new and unauthorized schemes.  If Robert Vaughn believes that the contempt power should be used for debt collection, he may petition the General Assembly to

---

[4]      Note that Judge Gardiner ultimately converted the show cause order into an ordinary civil judgment, apparently agreeing with the Plaintiff that he does not have the power to jail debtors for civil debts that are not fines on a criminal conviction.  However, again, this case here is not about what happens in the state court case below.  But in terms of the legitimacy of Plaintiff's position, Judge Gardiner seems to have conceded that Plaintiff is correct.  Plaintiff does not accept that there is a distinction and construes that order as illusory, but an effective concession that Moseley's arguments were correct all along.

amend the statutes of Virginia to say so.


November 5, 2021                         RESPECTFULLY SUBMITTED,
                                         Plaintiff,  *Pro Se*



                                         Jonathon A. Moseley, Esq.


                                         Virginia State Bar No. 41058
                                         5765-F Burke Centre Parkway, PMB #337
                                         Burke, Virginia 22015
                                         Telephone:  (703) 656-1230
                                         Facsimile:  (703) 997-0937
                                         Contact@JonMoseley.com
                                         Moseley391@gmail.com

## CERTIFICATE OF SERVICE BY MAILING

I hereby certify that on this November 5, 2021, a copy of the foregoing pleading has been distributed by the ECF filing system to:

          Mr. Mark R. Herring, Esq.
          Attorney General of Virginia
          Mr. Samuel T. Towell, Esq.
          Deputy Attorney General
          Mr. Marshall H. Ross, Esq.
          Senior Assistant Attorney General/Trial Section Chief
          Mr. Calvin C. Brown, Esq.
           Assistant Attorney General
          Office of the Attorney General
          202 North 9th Street
          Richmond, Virginia 23219
          Telephone: 804-786-4933
          Facsimile: 804-371-2087
          cbrown@oag.state.va.us

          Ms. Sheri H. Kelly, Esq.
          Assistant Attorney General
          Office of the Attorney General
          204 Abingdon Place
          Abingdon, Virginia 24211
          Office:  (276) 628-2964

Facsimile:  (276) 628-4375
SKelly@oag.state.va.us
Richmond, Virginia 23219
*Counsel for Judge Richard Gardiner*

Mr. Robert Vaughn, Esq.
O'Connor and Vaughn
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
Facsimile:  (703) 471-6496
E-mail:  RVaughn@Oconnorandvaughn.com
*Counsel for Solutions Painting and for Himself*

Jonathon A. Moseley, Esq.